WILLIAM M. GWIN et al. *vs.* ANSLEY McCARROLL.

The judgments of all courts may be examined into, so far as to ascertain whether they had jurisdiction, whenever they come in question, either directly or collaterally.

It must be shown by the record, that the court had jurisdiction of the party, either by service of process, or by publication, where that is authorized; and if there be no notice, actual or constructive, the judgment is a nullity.

If an' administrator sell the lands of his intestate under an order of the probate court, when the record does not show that legal notice had been given to the heirs at law, both the order and sale are void. '

By the statute of this State, the court may, in their discretion, after the plaintiff's demurrer to the defendant's plea or rejoinder has been overruled, either enter a final judgment for the defendants, or grant the plaintiff leave to withdraw his demurrer and file a replication or sur-rejoinder.

IN error from the circuit court of Madison county.

The action was debt, founded on two bills, single, for $6750 each, executed on the 28th day of December, A. D. 1836, by the defendants in the court below, William M. Gwin, William M. Winbourn, John H. Walker and Mitchell Calhoon, payable to the defendant in error, (by the description of administrator of the estate of Z. W. Banfield, deceased,) the first, due twelve, and the second, twenty-four months after date.

The defendants pleaded,

1. "That McCarroll, purporting to act as the administrator or Z. W. Banfield, deceased, and to have obtained all the necessary orders, and taken all the necessary steps to sell the real estate of which the decedent died seized and possessed, did cause the real estate to be set up and offered to the highest bidder; and the said Gwin and Winbourn, in the belief that Mc-Carroll had power to sell the lands of the intestate, and had complied with the requirements of the law in offering said lands for sale, became the highest and best bidders for the same; and in consideration thereof, and for no other consideration, executed the bills single, sued on, and procured the other defend-

ants, Walker and Calhoon, to sign and seal the same as securities. And the defendants, in fact, say the plaintiffs did not obtain the order, nor take the steps required by law to make a valid sale of said lands; but so managed and conducted the proceedings, that the said pretended sale was wholly null and void, and communicated no title to Gwin and Winbourn," and concludes with a verification and prayer of judgment.

2. "That the bills single, sued on, were executed by the defendants, as and for the consideration of certain lands, which the plaintiff, as the administrator of Banfield, deceased, had, before that time, purported to sell to the said Gwin and Winbourn; but the said pretended sale and the proceedings therein, were so conducted and carried on by the said plaintiff as administrator as aforesaid, that the said pretended sale was utterly null and void, and the title remained, and yet remains, in the heirs of Banfield, to wit, in the county aforesaid. So the defendants, in fact, say that the consideration for which said bills single were executed, has wholly failed; and this they are ready to verify, and pray judgment."

The plaintiff replied to the first plea as follows, to wit:

"*Precludi non:* Because he says that acting as administrator of Banfield, deceased, having first duly obtained letters of administration from the probate court of Madison county, aforesaid, he did make a good and valid sale of said lands to Gwin and Winbourn, which said lands are the consideration for which the bills single were executed; in this, that said plaintiff, acting as the administrator as aforesaid, did actually sell the said lands, by virtue of the power vested in him, by and under the judgment, and order, and decree of the probate court of Madison county, aforesaid. And said plaintiff further avers, that he did well and truly sell the said lands, in obedience to, and in pursuance of the judgment, and decree, and order of said probate court of Madison county, aforesaid, as it appears by the record of the said court of the said county; and this he is ready to verify by said records, so that the said plaintiff in fact saith, that the sale of said lands was not wholly null and void in manner and form, as said defendants, in said plea, have alledged; whereupon he prays judgment," &c.

Gwin et al. *v.* McCarroll.

The plaintiff replies to' the second plea substantially as he does to the first—verifies by the record of the probate court, and concludes, "So that the plaintiff, in fact, says, that the consideration of the said bills single, has not therefore failed, whereupon he prays judgment," &c.

The defendants rejoin to the first replication by protestation, &c., and say "that Banfield died, leaving children and heirs in the county of Madison, to whom the lands descended at his death, and that they resided there at the time any pretended order, judgment, and decree of the probate court was obtained for the sale of said lands, and at the time of the pretended sale of said lands, and that the said heirs were not made parties to any proceedings in the probate court, nor was any kind of process served upon them in the proceedings in said court, nor did they appear by themselves or counsel in the said court, in any matter touching the sale and condemnation of said lands, and verify and pray judgment."

To the second replication the defendants rejoin, and say the "plaintiff ought not to have and maintain his action, by reason of any thing in the replication set forth, or in the record of the probate court, therein referred to; because they say the plaintiff did not make a good and valid sale of land to the said Gwin and Winbourn, and that any pretended authority, derived by the plaintiff from the probate court, was wholly null and void, the said probate court having no jurisdiction to order or direct the said plaintiff, as administrator, to sell said lands upon the case presented by said administrator, to the said probate court; and that no notice was given to the heirs at law of said Banfield, who were citizens of Mississippi, residing in the county of Madison, at the time of any and all the proceedings by the said plaintiff, as administrator, as aforesaid, in said probate court, relative to the sale of the lands of the intestate, which the defendants are ready to verify, and pray judgment."

By consent of counsel, the plaintiff demurred *in short*, to both these rejoinders, and assigned the following causes of demurrer, to wit:

1. "Because the pleas and replications are multifarious, and

not such as, to which a single replication can be made by the plaintiff.

2. " Because the pleas set out and rely upon mere *matters of* evidence before the probate court, and with which this court has nothing to do.

3. " Because no certain matter or thing is alledged in said pleas, that can be made a bar to the action.

4. " Because the pleas are vague and uncertain.

5. " Because said pleas do not show that the plaintiff will be incapable of making such a title as he has bound himself by bond to make, when the defendants can legally call on him to do so.

6. " Because the defendants do not make profert of any title, bond or other deed of conveyance in their said pleas, to make a title of any particular kind or nature.

7. " Because the defendants do not show or alledge any dispossession or eviction of them from the purchased premises.

8. " Because the defendants do not show or allege any better outstanding title to said lands.

9. " Nor do they show in said pleas any injury the said defendants have sustained, or any they are about, or likely to sustain in future.

10 " Because the pleas are mere arguments, predicated on several remote possibilities, and not upon any one substantial fact, matter or thing, that can in law be made a bar to the plaintiff's action."

The demurrer was sustained by the court, and a judgment of *respondeat ouster* awarded. The defendants then filed their special pleas—all similar in substance, though differing in form, to the two pleas above set forth. The plaintiff replied substantially as to the first plea, and afterwards, by leave of the court, filed amended replications, setting out *in extenso* the proceedings of the probate court of Madison county. To these replications the defendants filed rejoinders, nearly the same as their former rejoinders, to all of which the plaintiff demurred. The court again sustained the demurrers, and the defendants refusing to plead further, judgment was given in favor of the plaintiff; and

the defendants now bring the case up by writ of error, and assign three causes of error, to wit:

1. "The court erred in sustaining the demurrer to the rejoinders of the defendants below, to the plaintiff's first and second replication.

2. " There is no judgment on the demurrer of the defendants to the plaintiff's replication.

3. " The court erred in sustaining the demurrer to the rejoinders of defendants, pleaded on *respondeat ouster.*"

This cause was argued and determined at the last term, and a re-hearing granted. The arguments of counsel, and the opinion of the court, delivered at the former term, having been withdrawn from the record, those delivered at the present term only are here given. We omit such portions of the brief of counsel as consist of mere recitals of the pleadings, and as have reference only to the second set of pleas, the opinion of the court being confined exclusively to the first.

*G. S. Yerger,* for the plaintiffs in error.

I will first attempt to show to the court, that judgment ought to have been rendered for the defendants on the first set of pleas, and that the judgment on these pleas, or some one of them, instead of *respondeat ouster,* ought to have been for the defendants. If I am correct in this position, it makes no difference whether the pleas filed after the judgment of *respondeat ouster,* are good or not.

1. The fact that the party pleaded over, which he was compelled to do by the erroneous judgment of the court in adjudging his pleas bad, is no waiver of the error.

If he had, voluntarily, withdrawn his pleas and filed others, it would be; but, in this case, it was the act of the court.

The court rendered an erroneous judgment; that is, it rendered a judgment against the defendant of *respondeat ouster,* when, as we think, it ought to have been for them, that the defendants go hence, &c.

The rule is well settled, that whenever there is error in the record, the judgment must be reversed; but this very point was

decided this term, by this court, in the case of *Willis & Conley* v. *T. B. Ives.* Also, in Peck's Tenn. Rep. 159.

2. It is now well settled, that the order or judgment of the probate court, ordering the lands of heirs to be sold, is void, if the heirs had not either actual, or the constructive notice, required by the statute.

This point was distinctly admitted and decided in the opinion of the chief justice delivered by him in this case, at the last term. He there laid down the rule, that if there was actual or constructive notice to the heirs, it gave the court jurisdiction; and that all intermediate orders, &c., however irregular, were only the subject matter of error. And, in that opinion, he correctly said, " the law does not require that the heirs should be 'made parties by actual service of process on them—that no other process is required, except that the citation shall be set up in three of the most public places in the county, for the space of thirty days; and that it also be published in a newspaper, for the same length of time." This, says the chief justice, constitutes the process or the service in the case. It is a " constructive notice or service, by which the law supposes the parties are informed of the proceedings," &c.; " and when the law has been complied with in this respect, the land of an intestate may be sold by order of the probate court."

In the above view, I entirely concur. If there is actual or constructive notice, the proceeding is merely erroneous; if there is neither actual nor the constructive notice required by the statute, the decree is void.

This is the rule laid down in many decisions by this court, to wit: *Campbell* v. *Brown*, 6 How. p. 209. *Puckett & Walker* v. *McDonald & Rogers*, 6 How. 269. 1 How. 60, 380, 386, 444. 5 How. 739. *Stark* v. *Gildart's* heir, 1 How., and many other cases might be cited from sister States, to the same effect.

The error, which I respectfully suggest, the court committed in the opinion delivered last court, was, that it did not notice or decide upon the first pleas, and that it considered the recital in the order of the probate court, " that notice was given ac-

cording to law," as sufficient to show the constructive notice required by the statute.

This was the precise case of *Campbell* et al. v. *Brown.*

In that case, the plea averred that no notice was given to the heirs. The court adjudged the plea good.

The pleadings in both cases, did not alledge that no process was served on the heirs, which would have been actual notice; but they alledged that no notice was given, which necessarily excluded the idea that either actual or constructive notice was given.

When the law allows either actual or constructive notice to be good, and the party pleads that "no notice was given him," it necessarily denies that notice of any kind was given him.

In this case, if actual or constructive notice was given, the plaintiff ought to have replied by setting out the record which contained the notice, if there was any.

The averment that they, the heirs, were citizens of Madison county, was unnecessary; for notice is necessary, whether they are citizens or not. It is surplusage, and may be rejected. 1 Chitty's Plea. ed. of 1827, 262–63.

We think, therefore, that this court, according to the statute, ought now to render such judgment on this plea, as the court below ought to have rendered—that the defendants go hence, &c.

*N. Calliham,* for defendants in error.

Appellee insists that the first and second pleas are double—state inferences and conclusions of law—are argumentative, vague and uncertain, and do not state a single fact or point upon which appellee could have properly joined issue.

But admitting that the matters and facts stated in the pleas are well and formally pleaded, still they cannot avail the appellants.

1. Because they began the pleas with an answer to the whole declaration, and only answer (if it is answer at all) part.

2. The pleas do not state what kind of an estate was agreed to be sold, and was offered and sold to Gwin and Winbourn.

3. The pleas do not state or show when the appellee was to make title.

4. The pleas do not show what kind of title the appellee was to make.

5. The pleas do not state that the appellee was, and is incapable of making a good title to the land whenever he may be called on to do so.

6. The pleas do not state or show that the appellee has not, since the time of the sale and executing the bills single, made a good title to appellants.

7. The pleas do not show an eviction from the lands, or any injury resulting to appellants from the sale, or failure of consideration. From all which, it is most manifest the pleas do not answer the whole declaration and show matter in bar thereof, for which reason they are insufficient and bad on demurrer. For it is a well established rule in pleading, that every plea shall answer the whole declaration, or count, or at least all which it assumes in the introductory part to answer, when it is a material part of the declaration, or count, and forms the gist of the action and no more. See 1 Chitty Plea. 5, Amer. from fourth Lon. ed. pp. 453, 454. 18 Johns.Rep. 29–30, *Hallett* v. *Holmes,* and authorities there cited. 1 Saund. 28, n. 3. 6 Johns. R. 63. · 20 J. R. 90.

8. Fraud is not directly charged in the pleas, and the statements in the pleas do not, by necessary inference and proper construction, amount to fraud. Therefore the appellants cannot rely upon them on that ground. Fraud cannot be set up by way of inducement, but must be directly and clearly charged. See 1 How. R. 341, 346. 5 Cow. 510. 9 Johns. R. 126. Coke on Litt. 716. Chitty Plea. 204. 1 How. R. 277.

Appellee insists that as great certainty is required by law in all pleas pleaded in bar, as there is in stating the plaintiff's cause of action in the declaration. See 1 Chitty Plea. 'It is necessary in declaring in covenant upon warranty of title to land, to alledge and prove an eviction. See 1 Yer. R. 16. 3 Johns. R. 471. 5 Johns. R. 120. 8 J. R. 202.

For the same reasons the defendants should state, and show

in their pleas, with equal certainty, an eviction to entitle them to the defence of failure of consideration.

It is true, the second plea says the title remained, and yet remains in the heirs of Banfield. This does not, however, show that the title has not been divested out of the heirs of Banfield and vested by appellee in the appellants, which may have been done, and Gwin and Winbourn may have thereafter conveyed, upon their own terms, the title back to the heirs of Banfield. This then does not present a bar to the action. The plea does not show that the making of titles to the land was a condition precedent to the payment of the bills single, by appellants. Admit, for the sake of argument, that the first pleas are good and properly pleaded, still they cannot avail the appellants: Because the replications to them avoid the most material matter of the pleas, and set out new matter, to wit: that he had duly obtained letters of administration, &c., and had, by virtue of power vested in him by an order, judgment, and decree of the probate court of Madison county, sold and conveyed, (in obedience, and in conformity to the order, judgment, and decree of of the probate court,) the lands to Gwin and Winbourn, a good and valid title to the same, and verifies by the record of the probate court.

The appellants should have rejoined to these replications. Nul-tiel Record, 7 Cranch, *Mills* v. *Durger*, 481. 2 Cond. R. 578. *Armstrong* v. *Carsons,* executors, 2 Dallas, 302. *Hampton* v. *McConnel,* 4 Cond. R. 243. 3 Wheaton, 234. 6 Pick. R. 237.

Illegality in a transaction is never presumed, on the contrary everything is presumed to have been legally done in the probate court, till the contrary is proved. See 1 Chitty, Plea, 204–5, n. s. 1 B. & A. 462. 10 Peters' Rep. 472. 4 H. R. 555.

The appellants violate this rule of law by requiring the court to presume fraud and failure of consideration.

The appellee has, in the replications, sufficiently pleaded the judgment order and decree of the probate court. See 10 Peters' R. 472. 1 Chitty, Plea. 204. Stephen's Plea, 357–8. 8 Co. R.

816.   13 Bacon's Abr. Pleas, n.   For necessary circumstances implied by law need not be expressed.   Ib.

The receipt of the vendee of a quitclaim deed, implies knowledge of a doubtful title to the land, and in such a case the vendee cannot resort to the implied covenants.   See 2 H. R. 608, 609.   An administrator's deed only acquits the purchaser from all claim of the heirs of the decedent, and is, therefore, in substance only a quitclaim deed, and comes within the last rule of law laid down.

But if McCarroll has made a deed to appellants with full covenants of warranty, &c., and put appellants into the possession of the land, (and such are the facts of the case as shown by the record, and the court are bound so to consider the case,) still this will not avail the appellants, as no eviction is averred in the pleadings, as has already been shown by 1 Yer. R. 16. Walker, 245.   3 Johnson R. 471.   5 J. R. 120.   8 J. R. 202. *Abbott* v. *Allen*, 2 J. Ch. R. 519.   19 Martin, La. R. 235.   *Brown* v. *Smith*, 5 H. R. 396.

9. The first plea does not show when the pretended sale was made.

10. The second plea says that the bills single were executed as and for the consideration of the land after the pretended void sale.   But how long after the void sales does not appear from the plea.   For this reason the plea is uncertain and bad.   The appellants attempt by rejoinders to the first replications to tender an immaterial issue, of actual notice personally to Banfield's heirs, of the application to the probate court for the order of sale of the lands, to the country.   No actual personal notice in such a case is required by the statutes and judicial decisions of this State.   Constructive notice to the heirs, and all others interested, is all that the law requires, and that was given by publication according to law, as is fully shown by the record of the probate court.   See Rev. Code, pp. 56, 57, 198.   H. R.   H. H. 407, 408, § 76, 77.

There is, therefore, no error in the judgment of the court in sustaining the demurrers to both these pleas and to the rejoinders.

Gwin et al. *v.* McCarroll.

*Caveat emptar* applies as well to real as personal property, and it is insisted, is applicable in this case. See Kent's Com. 2 Yerger, 396.    4 Yerger, 230.

The defendant in error insists that the proceedings in the probate court, to subject the lands of a decedent to sale to pay the debts thereof, is purely a proceeding *in rem.* And that the creditors have a general lien upon the lands as well as the personalty of the decedent, and that the heir takes it subject to that general lien and incumbrance. See 11 Sergeant & Rawle's R. 430.    Bull N. P. 244.    3 Peters' R. 315.    2 W. Bl. 977.    6 Por. Ala. R. 232–33.    6 Har. & Johns. 23.

The cases of *L. Campbell* et al. v. *W. J. Brown* and wife, and *S. Puckett & Walker* v. *McDonald & Rogers,* so much relied on by the plaintiffs in error, are distinguishable in many respects from the case at bar, and have but very little analogy to it. In the former case, a demurrer was filed to the pleas, thereby admitting the want of jurisdiction in the probate court; no judgment, however, was rendered on the demurrer. The appellant, Campbell, then offered to read to the jury a transcript of the record and proceedings in the probate court, showing that the probate court did not have jurisdiction, which was excluded from the jury by the circuit court, and a bill of exceptions taken to the opinion of the court. In the latter case, an injunction was granted to enjoin a judgment of the circuit court of Rankin county. The bill alledges that the probate court, on the application of the administrator in open court, to sell the land—a town lot of the estate in Brandon, ordered the administrator to sell the same forthwith; and that no other steps were taken by the administrator, or the court, to give the court jurisdiction, &c. The answer admits the charges in the bill. In that case, it is shown affirmatively, by the bill and answer, that the probate court of Rankin county had no jurisdiction. And it also appears negatively, in the former case.

I have shown affirmatively, by the record of the probate court, that it had jurisdiction in this case. The probate court, is a court of record of original, general, and exclusive jurisdiction over all matters confided to it by the revised constitution of Mis-

sissippi.   See Ar. 4, § 18.   2 H. R. 860.   And, inasmuch as
sufficient has been shown by the replications, to give the court
of probates jurisdiction, this court can only look to see by the
record, whether the probate court made an order of sale of the
land, and when that appears, as it does in this case, its judg-
ments and decrees are final and conclusive upon the world,
until reversed by a due course of proceedings, in a regular way.
Its judgments, whether irregular or not, will be presumed to be
correct by this court, whenever or wherever they are (as they
have been at the case at bar,) brought collaterally 'in question.
This doctrine has been fully sustained in all the latest adjudged
cases of high authority, I have examined upon the point, and
recognized in the decision of the supreme court of the United
States, in the case of *Voorhies* v. *The Bank of the United States*,
reported in 10 Peters' R. 449–50, where all the former decisions
of that court on the subject are revised ; and, it is believed that
this doctrine is not in conflict with any of the decisions of this
court reported by Howard.   See 11 Sergeant & Rawle's R.   6
Por. Ala. R. 232.

The judgment of a court, having jurisdiction of the parties
and the subject matter, is conclusive upon parties and privies,
notwithstanding the record may abound with irregularities,
which would authorize its reversal by a court of errors and ap-
peals.   See 10 Pick. 470.   6 Pick. R. 232.   7 Cranch. 483.   3
Wheaton's R. 134.   Hall's R. 446.   1 Yates' R. 533.   2 Dallas'
R. 54.   6 Wheaton's R. 109.   4 Wheaton 213.   1 Mason's R. 515.
1 Peters, C. C. R. 199.   1 Pick. R. 435.   Ib. 3, 33.   Ib. 6, 233
1 J. Ch. R. 322, and five hundred other authorities to the same
point.   6 Por. Ala. R. 237.

*Wm. Thompson*, on the same side.

The Court of appeals of Kentucky, decided in the case of
*Peebles* v. *Stephens*, 1 Bibb. 500, that plea of partial failure of
consideration, is not good under the statute of that State, which
is similar to the act of Mississippi, allowing the consideration of
bonds, &c., to be impeached.   See also on the same subject,
and what are the requisites of a good plea.   3 J. J. Marshall,
293.   4 Bibb, 346.   5 Monroe, 273.

The pleas of the defendants below, are intended, and profess to bar the whole cause of action, and of course to be good, must clearly and expressly show a total and entire failure of consideration.

The two first pleas filed by the defendants in bar of the action, contain no certain, full and specific statement of facts, which in law would bar the action, they attempt to plead conclusions of law, instead of stating the facts and leaving to the court to decide the law. These pleas are somewhat similar to, but more defective than those in the case of *Wily & Gayle* v. *White & Leslie*, Administrators, &c. 1 Stewart's Alabama Reports, 331, which the court decided to be defective.

The pleas alledge that the notes sued on, were given for land sold by the plaintiff below, to the defendants. Was that sale by parol? We know not from the statement of the pleas, but presume it was designed by the draftsman, it should be so understood, though the statute of frauds and perjuries is not relied on. Was a bond given for a title? It does not appear whether it was or not. If a title bond was given, when was the title to be made? We know not when. We are left equally uninformed from the pleas, whether a deed for the land was executed at the time of the sale, or not.

Each one of the above three possible state of facts, for ought that appears in the pleas, would present questions of law different from the others.

If we were required to conjecture what the truth of the case was, it certainly would be most natural and reasonable to suppose that the plaintiff had agreed, and given his bond to make a title when the purchase money should be paid. If this was the case, and it might at least have been so, for ought that appears in the pleas, (it will be borne in mind that we are testing these pleas by what appears on their face alone, and not by what appears in any subsequent part of the record,) then the doctrine laid down by the court of appeals of Kentucky, in the case of *Young* v. *Triplett*, 5 Litt. Rep. 248–49 would apply, in which they decide that in cases of executory contracts for land, when one party holds the notes for the purchase money, and

the other a bond for a conveyance, a failure of consideration, cannot be pleaded by the purchaser to the notes, because the purchaser has his counter contract, on which he can make the vendor liable, and the vendor—if the plea were allowed—would still remain liable as well as before. Nor has a plea been allowed to a writing for the purchase money, when the contract was executed on the part of the vendor, &c.

The above doctrine is recognized by this court in the case of *Gibson* v. *Newman*, 1 Howard's Rep. 341, and many authorities cited to show its correctness. The court in that case, also decide that it is not necessary the vendor should have a title at the time he contracts, it is sufficient if he can make a good title at the time he agreed to convey.

The pleading over on the judgment of *respondeat ouster*, waives these first pleas. See 3 Stewart's Alabama Rep. p. 288.

The court will see upon inspection, that the law cited in relation to the first pleas, is equally applicable to the three last pleas filed on the judgment of *respondeat ouster*, which pleas are *still* more defective than the first. The defects in the pleas cannot be aided by the subsequent pleading. Stephen on Pleading, 144 to 149.

The replication of plaintiffs, setting out the record of the probate court, and the order for the sale of the land, shows a citation had issued, and was published according to law, and that it was necessary to sell the land for the payment of the debts. The probate court then had jurisdiction of both the person and the thing, and its judgment is conclusive, till reversed by writ of error, and cannot be collaterally impeached.

It will be observed that the decree of the probate court, states that a " citation had been regularly published according to law," not that it was published in a public newspaper, but showing by the manner of the expression, that the court meant that it had been published, or made known, *in the* ways prescribed by law, and that they meant to use the word publish, according to its general import.

*Sheppard*, also on the same side.

*Wm.* and *G. S. Yerger,* in reply.

Every question in this case has been decided by this court in the two cases of *Campbell* and others v. *Brown,* and *Puckett & Walker* v. *McDonald & Rogers,* not yet reported, but opinions to be found in Opinion Book B. at pages 193, 209.

An administrator has no right to meddle with the real estate of a decedent, nor has the probate court any power to decree its sale, but in the cases pointed out in the statute, and upon an observance of the forms and qualifications thereby imposed.

The statutes authorizing sales of real estate, by an administrator, will be found by reference to How. & Hutch. Dig. p. 407, § 76, 77, 78, and p. 418, § 113, 114, 115.

A special power, granted by a statute, affecting the property of individuals, ought to be strictly pursued, and ought to appear to be so, on the face of the proceeding. 3 Johns. Cases, 107.

Sales by administrators of real estate, without compliance with the formalities required by statute, are absolutely void. 10 Peters. R. 161. 1 Story's Rep. 478. 5 Cond. P. R. 32. 4 Yerger. Walker's R. 76. 2 Cond. P. R. 98.

The power to sell the lands of minors, is a statutory power alone. By the common law, it had to be partitioned, however absurd such partition might be. Allunt on Partition, 85. 1 Maddox, 339. 3 Yerger R. 78.

A judgment or decree, rendered without notice, is absolutely void, not merely erroneous. 1. How. R. 61, 386, 444. 5 Wend. R. 153. 4 Hay. R. 59. 2 Dev. Eq. R. 224. 4 Peters' R. 466. 2 Yerg. 382. 3 Wilson, 297. 1 Camp. R. 66. 6 Yerg. 522. 4 Ib. 218. 2 Paige's Ch. R. 301. 5 How. R. 517. 16 Lou. R. 570.

The sale being under a void judgment, is also void, and it being void, no title passed, and, of course, the note is entirely without consideration. 2 Stewart's R. 331. 8 Mass. R. 46. 7 Ib. 14. 4 Littell's R. 242. 3 Marsh. 298. Bayley on Bills, 538.

Where constructive service is adopted in lieu of actual personal service, a return setting out such constructive service, must show that the requirements of the law have been complied

with, or the service is bad and the judgment void.   16 La. R. 570.   19 Ib. 36.

1. There is no question but if the sale made by the administrator was void, (whether he made a deed, or agreed to make it, in pursuance of the sale,) the notes given for the purchase money cannot be enforced.   This was the precise point decided in the case of *Campbell* v. *Brown*, Opinion Book, B. 209.   *Puckett* v. *McDonald*, Ib. 193.   In 10 Martin, 736, all contracts to sell minors' estates are void unless the formalities of law are complied with.

The cases cited by Wm. Thompson, from Pintle's Dig. 147, 152, and 1 Howard, have no application.   They were sales or deeds, made by the owner; they passed all his right.   The deed or instrument was not void, but conveyed whatever interest he had.

But in a sale made by an administrator, if he has no authority to sell, the sale is void; the deed is also void, and does not pass even such interest as the intestate had.   Hence, neither possession nor title, nor any interest whatever, passes, as the sale or instrument itself is void.

2. At common law, the land was not liable, except the heir was bound in a bond.   The statute gives to the probate court, jurisdiction to sell for payment of debts, provided the personal estate is insufficient.

The lands vest, by descent, in the heir, and before his title can be divested, the legislature deemed it proper that he might become a party, and contest the facts alledged by the administrator.   H. & H. 407.

The court has no power to order a sale, unless the prerequisites of the law are shown by the record to have been complied with.   The order of sale is absolutely void, according to all the authorities but 6 Porter.

The two cases decided by this court, decide, if the notice required by the law, does not appear to be given by the proceedings, it is void, and that the mere order of the court, without notice, is not sufficient.   If the record does not show this fact, the executor has no authority to sell.

The record must show,

1. An inventory of the debts and personal estate, accompanied by the oath of the administrator, that the personal estate is insufficient. Until this fact appears, the court has no power to act. It is a condition precedent.

2. When this appears, it issues a citation, and this must be posted up, and must be published in the manner prescribed by the act.

3. The record must show the facts, not the opinion of the judge, that the facts were so, &c. Unless the above facts appear, the sale is void for want of authority.

A general plea, that the consideration of this note was for land sold by administrator, and that he had no authority to sell the same, because he did not give the heir at law, &c. is good. See the cases in opinion book.

The other party may reply that he had authority, and that notice was given, and set out the proceedings of the probate court.

4. The demurrer to the rejoinder of the defendant, to the second replication, ought to have been overruled. It was sustained, and a *respondeat ouster* awarded, and other pleas filed. This does not do away the error. If a plea in abatement, or any plea in bar, is improperly decided to be bad on demurrer, and *respondeat ouster* awarded, and pleas in bar afterwards filed, it is no waiver of the error of the court. Peck's R. 159.

Mr. Justice CLAYTON delivered the opinion of the court.

This cause turns entirely upon the pleadings, which are unusually prolix and intricate, so much so, that it is a matter of no little difficulty, to extract the points intended to be submitted for consideration. The action is debt, founded upon two bills single, for the aggregate amount of $13,500. The defence intended to be set up, was that these bills single, had been given as the price of a tract of land sold by the plaintiff in the court below as administrator of Banfield, by virtue of an order of the probate court of Madison county, but that the sale was in fact made without authority, because there had been no notice to the parties interested of the intended application for the order, and that for the want of notice to the heirs of Banfield, the order

for the sale was void.    There are two sets of pleas in which this defence, varied into many shapes and wearing many hues, is presented for decision.    To the first set a demurrer was filed and sustained—to the second set a demurrer was also filed and sustained, and the defendants upon leave given having declined to plead farther, a final judgment was entered up against them. From this judgment, the cause was brought by writ of error to this court.

It will be well to consider in the first place, whether the matter intended to be pleaded, constituted a valid and legitimate bar, if in proper form.    From the previous decisions of this court, as well as those of our sister States, it is a settled doctrine, that the judgments of all courts may be examined into, so far as to ascertain whether they had jurisdiction, whenever they come in question, either directly or collaterally.    It must be shown by the record, that the court had jurisdiction of the party, either by service of process, or by publication, where that is authorized. *Campbell* v. *Brown* et al. Opinion Book B, p. 209.    If there be no notice actual or constructive, the judgment is a nullity.    15 Johns. 141.    11 Wen. 652.    4 Peters, 474.    2 Yer. 484.

The defence is sometimes made under a special plea, and sometimes under the general issue.    It was done in the latter mode in Campbell's case, just cited, and in 2 Stewart's Rep. 335. It is clear that the defence is legitimate, if sustained by the proof; as our statute directs that notice of an application to sell the lands of an intestate, shall be given by having the citation set up in three of the most public places in the county for thirty days, and by publication for the same length of time in a public newspaper of the State.    This brings us to the question of the sufficiency of the pleadings in this case.

We shall not attempt even an abstract of the several pleas, replications, rejoinders and demurrers, in which the pleaders have found vent for their ingenuity and exhibited their skill.    They spread over some thirty pages of well filled paper, and might give some countenance to the remark of the satirist who thought the pleadings were intended " to entangle justice in a web of law."

We shall only notice so much of the pleadings, as is neces-
sary to the correct understanding of our decision.   The second
plea in the first set, avers " that the bills single, were executed
for the consideration of certain lands which the plaintiff as ad-
ministrator of Banfield had before that time purported to sell
to the defendants, but the said pretended sale and the pro-
ceedings necessary thereunto were so conducted and carried
on by the plaintiffs, that the said pretended sale was utterly
null and void, and the title remained and yet remains in the
heirs of said Banfield, and so the consideration has wholly
failed."   The replication to this plea avers, " that the plain-
tiff as adminstrator as aforesaid, did make a good and valid sale
of the said lands to the defendant, which are the consideration
of the bills single, in this, that the plaintiff, acting as said ad-
ministrator, did offer for sale, and did actually sell the said lands
by virtue of the power vested in him by and under the judgment
and decree and order of the probate court of Madison county, as
appears by the records of said court."   The rejoinder to this re-
plication alledges, " that the plaintiff did not make a good and
valid sale of land to the defendant, and that any pretended au-
thority derived by the plaintiff from the probate court was wholly
null and void, the said probate court, having no jurisdiction to
order or direct the said plaintiff as administrator to sell said land
upon the case presented by the said administrator to the said pro-
bate court, and no notice was given to the heirs at law of said
Banfield, who were citizens of the State."   To this rejoinder the
plaintiff filed a general demurrer in short by consent, which was
sustained by the court below.   The question now is, do these
pleadings constitute a good bar, in point of form ?

The plea is that there was a failure of the consideration of
the bills single, because the sale made by the administrator,
was not valid—the replication is that the sale was valid—and
the rejoinder alledges that the sale was not valid, because of a
failure to give notice.   These pleadings are concise, definite,
and certain, and if issue had been taken, the inquiry was nar-
rowed down to the single point, whether or not notice had been
given.   The result of that single inquiry, would have deter-

mined the cause, and it could not have been submitted in more plain and intelligible language. We are of opinion that the demurrer was improperly sustained. We have already shown that if the order of the probate court, directing the sale was made without notice, in some authorized mode, to those interested, the court would not have had jurisdiction, and its order would for that reason be void. See *Jones* v. *Earthman*, 2 Yer. 481.

According to the decision made at this term, in the case of *Willis & Conley* v. *Ives*, the subsequent pleadings of the defendant do not prevent the reversing of the judgment, for the erroneous determination of the demurrer. We are of opinion that the demurrer should have been overruled, and it thus becomes necessary to consider what judgment we should give.

It is insisted in the argument, that upon a reversal of the judgment, this court should enter up such judgment as the court below ought to have given, which should have been in favor of the defendant. By the ancient common law rule, that would no doubt have been the course; but even in England of late, it is the usual practice for the court, after the decision of the demurrer, to permit the plaintiff to withdraw it, and file a replication, if he applies for leave to do so. 2 Wils. 173. 1 Robinson's Practice, 292. In New York, the rule is thus stated, " in all cases of demurrer by either party, when it is not frivolous, the court will, during the same term in which their decision is rendered against the party demurring, and at the time of giving judgment, allow him to withdraw his demurrer, and plead or reply. But it is too late to make the application at a subsequent term. Graham's Prac. 762. 2 Caines, 369. In Tennessee, a similar rule and similar practice prevail. *Blackmore* v. *Phil*, 7 Yerger, 465. In North Carolina, it is said, their statutes of amendment were designed to remove the remaining scruples of the courts, in allowing them to be made. 3 Dev. 203. Our own act is not less liberal than any other, and it directs that " the courts of law shall have full power and authority to order and allow amendments to be made in all proceedings whatsoever, before verdict, so as to bring the merits of the ques-

tion between the parties, fairly to a trial." Indeed, its end and object seem to be, to prevent decisions upon technical grounds, instead of the merits, upon fair submission to a jury. Were we, then, to give the judgment which ought to have been given by the court below, we should say that the demurrer of the plaintiff to the rejoinder of the defendant, ought to be overruled, and leave given him to withdraw it and file a sur-rejoinder. But, inasmuch as applications for amendments are addressed to the sound discretion of the court, it might be going too far upon our part, to say that such leave should be granted. We shall, therefore, only remand the cause, that the court may exercise its discretion; which, we doubt not, will be done in a just and proper manner.

We are aware that this point received a different determination in this court, in the case of *Bailey* & *Wade* v. *Gaskins*, not yet reported. But that decision was made upon the original common law rule, without reference to our statutes. We are now satisfied that it is not the law. As it is a mere question of practice, not yet extensively promulgated, and as no rights probably, have grown up under it, which would be unsettled by a departure from it, we have thought it better to abandon it, than to attempt to build upon it. We know the importance of adhering to the decisions of this court, and we shall not lightly depart from them, but when no injury can be supposed to follow from the charge, we deem it right to correct any error; and in this we have the example of the very highest tribunals of justice. See *Butler* v. *Van Wych*, 1 Hill, 463.

We have not noticed the last set of pleadings, because in the view here taken, they are wholly superfluous.

The judgment will be reversed, and the cause remanded to the court below.