DeWitt *v.* Thompson *et al.*

(In Banc. April 13, 1942.)

[7 So. (2d) 529. No. 34939.]

Austin & Austin, of Jackson, for appellant.

Currie & Currie, **E. J.** Currie, **Earl L. Wingo**, and George **W.** Currie, all of Hattiesburg, for appellee, Ben Stevens.

Heidelberg & Roberts, of Hattiesburg, for appellees, Mack W. Thompson, United States Fidelity & Guaranty Co., and Barney Brannon.

Argued orally by **B. Galloway Austin**, for appellant, and by **M. M. Roberts** and **George W. Currie**, for appellees.

**Anderson, J.**, delivered the opinion of the court.

The appellant, Malcolm DeWitt, brought this action in the Circuit Court of Forrest County, against Mack W. Thompson, sheriff of that county, and one of his deputies, Barney Brannon, and the U. S. F. & G. Co., surety on the sheriff's official bond, and against Judge Benjamin Stevens, Chancellor of the Tenth Chancery Court District of this state, to recover damages in the sum of $5,000, charged to have been suffered by him at the hands of the defendants, as the result of a false arrest and imprisonment. A demurrer was interposed by each of the defendants, which was sustained, and the suit dismissed. From that judgment DeWitt prosecutes this appeal.

Leaving off the formal parts of the declaration, it follows:

"On September 26, 1940, and theretofore, the defendant, Ben Stevens, had been duly elected and was serving as chancellor in Forrest County, Mississippi, along with other counties in his district, and that the defendant, Mack W. Thompson had been duly elected and was at said time as aforesaid serving as sheriff of Forrest County, Mississippi, having taken the oath of office and furnished bond as provided by law, and had as one of his deputies the defendant, Barney Brannon, serving as a deputy sheriff of Forrest County, Mississippi, and the defendant, the United States Fidelity and Guaranty Company, was surety on the official bond of Mack W. Thompson as sheriff of Forrest County, Mississippi, said bond being in the penal sum of $10,000.00, being dated November 15,

1939, a copy of said bond being hereunto attached as Exhibit 'A' and prayed to be considered a part hereof.

"That on said date, to-wit: September 26, 1940, the plaintiff, Malcolm DeWitt, was a resident citizen of Forrest County, Mississippi, having resided there a number of years, and that while at the home where he and his wife, the former Mrs. Mary Lou Smith, were residing, Mr. Barney Brannon, a deputy sheriff of Forrest County, Mississippi, came to their home and told them, the plaintiff and his wife, to come and go with him to the court house, that the Honorable Ben Stevens, the chancellor, wanted to see them, whereupon the plaintiff requested that he be allowed to change his clothes, but he was informed by the said Barney Brannon that that would not be necessary, that they would only be in court for just a few minutes and that he would bring them back home. That prior to the time of the plaintiff's marriage his wife had formerly been the wife of one A. C. Smith from whom she was divorced on the 14th day of June, 1940, by decree of the chancery court of Forrest County, Mississippi, as shown by the minutes of said court in Minute Book 19, page 638 and 639. That said decree recited among other things as follows: 'The Court finds that the complainant is entitled to the temporary custody of said minor children; to-wit: Gloria Smith, A. C. Smith, Jr., and Robert Thomas Smith, with the right of the father to visit said children at any and all reasonable times. The court retains jurisdiction of the minor children for the purpose of fixing their permanent custody at a later date and during vacation.'

"That the said plaintiff and his wife were carried by the said Barney Brannon to the court house on said September 26, 1940, as aforesaid and were carried before the Chancellor, Ben Stevens, and on this occasion the plaintiff was bawled out by the said Chancellor, Ben Stevens, and that when this plaintiff sought to question the chancellor as to what this matter was all about he was told by the chancellor to shut his mouth and that on that occasion

the chancellor, Ben Stevens, defendant herein, entered the following order:

" 'Mrs. Mary Lou Smith

V.                                                                No. 7683

A. C. Smith

" 'The court finding that the mother of the children having remarried and now being married to one Malcolm DeWitt, and finding that neither the mother or the step-father are suitable or fit persons to have the custody of the children and that said children are seriously neglected and their best welfare jeopardized, and that the mother and stepfather are threatening to flee the jurisdiction of this court and remove the children from the jurisdiction of the court:

" 'It is ordered, adjudged and decreed that the order of the court entered in this cause on the 14th day of June, 1940, be and the same is set aside as to the custody of said children, and it is ordered that the said Malcolm DeWitt and Mrs. Mary Lou Smith DeWitt be remanded to the Forrest County jail until they shall make bond in the sum of $500.00 conditioned that they will remain within the jurisdiction of the court and that they or neither of them will remove the children from the juris-diction of the court.

" 'So ordered, adjudged and decreed, this the 26th day of September, 1940. Ben Stevens, Chancellor.'

"That immediately upon the entering of this order by the defendant, Ben Stevens, the plaintiff made further inquiry as to what this was all about and the defendant, Ben Stevens, thereupon told the said Barney Brannon to 'put this man under the jail;' and the plaintiff was thereupon carried to the Forrest County jail where he was locked up and kept for a period of five days before he was released. That all of the aforesaid was done by the defendants, the said Ben Stevens and Barney Bran-non, without authority of law, excuse, or justification. That this plaintiff was not a party to the suit involving the custody of the Smith children as aforesaid, that no

summons or citation had been issued commanding him to appear in court, nor had any warrant for his arrest been issued nor had he been charged with any crime, but that this was a high-handed procedure on the part of these defendants against this plaintiff and that when the said plaintiff was released from jail as aforesaid he was then carried by the said Barney Brannon outside of the city limits of the City of Hattiesburg, Forrest County, Mississippi, and told by the said Barney Brannon that the judge, namely the defendant, Ben Stevens, had instructed him to inform the plaintiff that he was not to be seen in Hattiesburg until he had secured employment. This arrest and false imprisonment was without authority and without any warrant and without excuse or justification and that said false arrest and false imprisonment caused your plaintiff great humiliation and mental anguish in the sum of Five Thousand & No/100 Dollars ($5,000.00).''

There was no charge in the declaration of corruption on the part of the chancellor, the sheriff, or his deputy, nor that the chancery court was without jurisdiction of the subject matter on a proper proceeding. The declaration, fairly interpreted, simply means that the chancellor was without authority to make the orders he did, and, therefore, the sheriff and his deputy were without authority to execute them.

Some courts hold that even where a court is without jurisdiction of the subject matter—in other words, with no authority to act on the subject under any conditions—the judge is not liable in tort to a litigant for an injury suffered. Some authorities hold to the contrary. We do not go into that question because we have here a subject matter over which the chancellor would have had jurisdiction on a proper proceeding. In Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593, 595, the court used this language:

''Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became

the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the Legislature to abate the said power and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and of the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced by any waiver, or omission or neglect or design of a guardian, or of any other person, so far as within the power of the court to prevent or correct. Grif. Chan. Prac., secs. 45, 360, 530, 533. All persons who deal with guardians or with courts in respect to the rights of infants are charged with the knowledge of the above principles, and act to the contrary thereof at their peril.''

In the order turning the children over to their mother, the court used this language: ''The Court finds that the complainant is entitled to temporary custody of the minor children, to wit, Gloria Smith, A. C. Smith, Jr., and Robert Thomas Smith, with the right of the father to visit the children at any and all reasonable times. *The court retains jurisdiction of the minor children for the purpose of fixing their permanent custody at a later date during vacation.*'' (Emphasis ours.) In a short time after this order was made the mother was married to the appellant, DeWitt. They were living together as man and wife, and of course jointly had the custody and control of the children.

Undoubtedly a legal and appropriate proceeding could have been instituted, by means of which the same result could have followed that did take place. We have here, therefore, illegal action on the part of the chancellor that could have been made legal by a proper proceeding. The public policy on which a judge cannot be held liable for an error under such conditions is stated in the following language by the Supreme Court of the United States, in Bradley v. Fisher, 13 Wall. 335, at page 347, 20 L. Ed. 646: "It is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility.

"The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the court of this country. It has, as Chancellor Kent observes, "a deep root in the common law.' "

In that case the court went farther, and held that courts of general jurisdiction are not liable to civil actions for their judicial acts, when such acts are in excess of their jurisdiction, and are charged to have been done maliciously or corruptly. We do not go that far in this case, because, as stated, there was no showing of either corruption or excess of jurisdiction. The principles laid down in the Bradley case, quoted above, are supported by numerous

authorities, 22 Am. Juris., sections 52 and 55, page 390, section 55, page 392, section 56, page 393, section 57 page 394; 11 R. C. L., section 26, p. 813; 15 R. C. L., section 31, pp. 543, 544; section 32, p. 546.

There is no liability on the part of the sheriff and his deputy. The authorities holding that the sheriff is liable for a tort, as the result of an illegal process issued by a ministerial officer, and served by him, has no application to this case. Here we have an order of the court, issued to the sheriff, who had to obey the order or subject himself to punishment for contempt. Section 3315, Code of 1930, prescribes the duties of the sheriff. It is in this language:

"The sheriff shall be the executive officer of the circuit and chancery court of his county and shall attend all the sessions thereof with a sufficient number of deputies or bailiffs. He shall execute all orders and decrees of said courts directed to him to be executed, and shall take into his custody, and safely keep, in the jail of his county, all persons committed by order of either of said courts, or by any process issuing therefrom, or lawfully required to be held for appearance before either of them."

The sheriff, when the order was given him by the court, was not due to enter into a discussion with the chancellor as to whether or not it was legal. He had the right to assume that the chancellor was acting within his authority.

Upon the entry of the order of the court sustaining the demurrers, the plaintiff moved the court to grant him leave to amend his declaration, "or that he be granted an appeal to the Supreme Court." The court overruled the motion and granted the appeal. This action of the court is assigned and argued as error. The plaintiff was due to inform the court, at least in substance, as to what the amendment would be. He should have shown the court whether or not it was material. No such showing was made, or atttempted. Furthermore, the allowance of an

amendment, under the circumstances, was largely in the discretion of the court. Gwin v. McCarroll, 9 Miss. 351, 1 Smedes & M. 351; Scharff v. Lisso, 63 Miss. 213.

Affirmed.