# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-IA-01379-SCT

*JEFFREY A. WEILL, SR.*

*v.*

*KARLA WATKINS BAILEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2015 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| TRIAL COURT ATTORNEYS: | JAMES ASHLEY OGDEN |
| | JAMES W. SMITH, JR. |
| | TYLER ARTHUR ROYALS |
| | DIANE PRADAT PUMPHREY |
| | NICHOLAS DENSON GARRARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | DIANE PRADAT PUMPHREY |
| | NICHOLAS DENSON GARRARD |
| ATTORNEYS FOR APPELLEE: | JAMES ASHLEY OGDEN |
| | JAMES W. SMITH, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 04/06/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    Karla Watkins Bailey, former court administrator to Hinds County Circuit Court Judge

Jeffrey A. Weill Sr., filed a complaint against Judge Weill in his individual capacity, alleging

that he had committed libel against her.  Bailey's complaint and amended complaint were

based on language in a footnote contained in four orders entered by Judge Weill in separate

criminal cases that were before him. The alleged libelous language in the orders provided that Bailey had been reprimanded by Judge Weill for engaging in improper ex parte communications while she was his court administrator and she had added a certain public defender as counsel of record in her current position as deputy clerk.

¶2. Judge Weill filed a motion to dismiss Bailey's complaint and amended complaint, raising several grounds for dismissal, including judicial immunity. The trial court denied the motion and ordered the parties to commence discovery. Judge Weill filed a petition for interlocutory appeal. The Court granted the petition. We hold that the trial court erred by failing to correctly apply the doctrine of judicial immunity to Bailey's claim that Judge Weill libeled her via the underlying orders. Accordingly, the trial court's order is reversed and we remand for further proceedings consistent with the instant opinion.

## FACTUAL BACKGROUND

¶3. On April 16, 2015, Bailey filed a complaint in the County Court of Hinds County against Judge Weill in his individual capacity alleging "libel, slander, defamation of character, intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with an advantageous situation, negligent interference with an advantageous situation, making defamatory statements with the intent to deprive [Bailey] of her job, defamation of character, harassment, general negligence in releasing information that [was] not accurate or supported by facts."

¶4. Bailey was employed as Judge Weill's court administrator from January 2011 until November 29, 2012. Bailey claimed that during her employment, Judge Weill engaged in

2

a pattern of abusive language and disrespectful actions against her. Bailey alleges that, after she left her position as court administrator, a dispute developed between Judge Weill and Hinds County Public Defender Alison Kelly. In the midst of the dispute, Kelly filed motions requesting that Judge Weill recuse himself from fifty-six criminal cases that she had been assigned and in which she was counsel of record. On February 10, 2015, Judge Weill entered separate orders denying Kelly's multiple motions. Four of the orders (February 2015 orders) also addressed a motion for clarification of representation that Kelly also had filed in the criminal cases. Bailey alleges that the following language, found in a footnote appearing in each of the four orders, libeled her:

> The Court notes that the entry of the Motion for Clarification was made by Deputy Clerk Karla Bailey, f/k/a Karla Watkins, who was previously employed as the court administrator for the undersigned and who resigned after being reprimanded for improper ex parte contacts with Ms. Kelly about substantive issues involving the criminal docket. It is presumed that since Ms. Bailey was the deputy clerk who entered the Motion for Clarification, she is also responsible for adding Ms. Kelly's name as an attorney of record.

¶5.    Bailey addressed the February 2015 orders in her complaint:

> In the [o]rders, [Judge Weill] specifically named [Bailey] and falsely stated [he] had reprimanded [Bailey] for making improper ex parte contacts with Ms. Kelly. Judge Weill also stated it was his assumption that since [Bailey] was a deputy clerk in the Hinds County Clerk's office she was the one who entered the Motion for Clarification and she was the one who added Ms. Kelly's name to the document. Judge Weill continues to make false statements about [Bailey] and her character as he continues his ill-conceived vendetta to discredit Ms. Kelly and attack her character.

¶6.    Bailey claimed that she suffered physical injuries, emotional injuries, and loss of reputation as a result of the acts of Judge Weill.

¶7.    On May 8, 2015, Bailey filed an amended complaint. According to Bailey, the purpose of filing an amended complaint was to make the allegations in the initial complaint complete and to address the issues more specifically. The amended complaint mirrors the initial complaint. However, Bailey elaborates on her accusations of Judge Weill's improper conduct while she was employed as court administrator that she had alleged generally in the initial complaint.

¶8.    Bailey added that Judge Weill's statements made in the February 2015 orders denying Kelly's motions for recusal were "willfully and intentionally made with a desire to harm [Bailey's] personal, professional and public reputation." Bailey alleged: "Since the filing of [Bailey's [c]omplaint[, she] has been targeted by [Judge Weill's] associates who on at least two occasions on April 20, 2015 and April 21, 2015 came to her desk in the clerk's office and made harassing gestures and inappropriate jesters [sic] of intimidation." Bailey also alleged that Judge Weill "has carried out a pattern of intentional intimidation, punishment and attempted public humiliation against [Bailey] that started in 2012 and has continued as recently as February 2015."

¶9.    On May 15, 2015, Judge Weill filed an answer to Bailey's complaint and amended complaint. The same day, Judge Weill filed a motion to dismiss Bailey's complaint and amended complaint. Judge Weill argued that the complaints should be dismissed under Mississippi Rule of Civil Procedure 12(b)(6) because Bailey had failed to state a claim on which relief could be granted based on judicial immunity, among other grounds.[1]

---

[1] Because of concessions made by Bailey and the dispositive issue of judicial immunity, it is not necessary for the Court to address the additional grounds raised by Judge

4

¶10.    On July 30, 2015, the trial court held a hearing on Judge Weill's motion to dismiss. After hearing oral arguments of the parties, the trial court denied Judge Weill's motion to dismiss from the bench. The trial court stated: "There has not been any discovery. And without some evidence or some testimony, something that the [trial] court can base its opinion on, I don't have anything to decide that."

¶11.    On July 31, 2015, Bailey filed a motion to file a second amended complaint. Bailey attached her proposed second amended complaint to the motion. The second amended complaint contains an additional allegation relating to an article dated May 9, 2015, published in *The Clarion-Ledger*, which contained Judge Weill's statements in response to the present lawsuit. The new portion of the proposed second amended complaint relating to *The Clarion-Ledger* article provided:

> Plaintiff filed her Amended Complaint on May 8, 2015. On May 9, 2015 the Defendant is quoted in *[T]he Clarion[-]Ledger* Newspaper in his individual capacity and not in his official capacity stating that he was "going to seek sanctions against those falsely accusing him" and "I am confident these outrageous claims will ultimately be ground to dust." He also stated the claims against him were "utterly false." These statements constitute lible [sic], per se slander, slander, defamation of character and harassment against the Plaintiff. The statements were made by the Defendant in his individual capacity and not in the scope and course of his employment and not in a matter which he held any jurisdictional control and the actions constituted a nonjudicial act. The Defendant acted with specific intent in his actions with the sole intent to injure Plaintiff. Defendant made these statements and took these nonjudicial actions in [sic] while in complete absence of all jurisdiction to do so.

¶12.    The trial court never ruled on the motion to file a second amended complaint and it is currently pending at the trial level. Because the motion to file the second amended

Weill.

5

complaint neither has been denied nor granted, we do not address the merits of the new allegations contained therein.

¶13. On August 24, 2015, the trial court entered a written order denying Judge Weill's motion to dismiss. Judge Weill filed a petition for interlocutory appeal. On December 9, 2015, the Court granted Judge Weill's petition for interlocutory appeal.

## STANDARD OF REVIEW

¶14. "The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." **Burch v. Illinois Cent. R.R. Co.**, 136 So. 3d 1063, 1064-65 (¶ 3) (Miss. 2014). "A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." **Rose v. Tullos**, 994 So. 2d 734, 737 (¶ 11) (Miss. 2008). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." **Scaggs v. GPCH-GP, Inc.,** 931 So. 2d 1274, 1275 (¶ 6) (Miss. 2006).

## ANALYSIS

### I. Whether the trial court erred by denying Judge Weill's motion to dismiss.

¶15. The Court's analysis is limited to the issue of judicial immunity, as it is dispositive of the issues raised on interlocutory appeal. Bailey conceded that, despite the additional history between the parties alleged, her complaint and amended complaint arise from two public statements made by Judge Weill. The first statement is contained in a footnote in the February 2015 orders, which Judge Weill entered in four criminal cases before him. The

6

other statements were contained in an article in *The Clarion-Ledger* quoting responses made by Judge Weill to Bailey's present lawsuit.

¶16.    Bailey's counsel acknowledged that any claims arising from the factual allegations when Bailey was Judge Weill's court administrator are barred by the statute of limitations. Bailey's counsel conceded at the hearing on Judge Weill's motion to dismiss:

> Now, I understand that they have seized on some of the facts that we have laid out in the complaint to explain why we think it's intentional and say that those acts from three years ago have run under the statute. I don't dispute that. I'm not making a claim for three years ago when he made those disparaging remarks to her. *We believe that the crux of the claim is for the statement made in the February, 2015 order that you have mentioned. That's where it all is. Everything else was issues that justify or explain why he did that.* (Emphasis added.)

¶17.    Bailey maintained in her appellate brief that her "primary claim stems from the subject February 10, 2015 Orders issued by Judge Weill." Bailey explained that "[a]ll the other issues that existed while Bailey was employed by Judge Weill are now beyond the statute of limitations and cannot be litigated."[2] To be sure, Bailey argued that her "action stems from Judge Weill's February 10, 2015 [o]rders." Accordingly, the Court's analysis on the issue is limited to addressing the alleged defamatory language in the footnote contained in the February 2015 orders.

¶18.    Mississippi has long recognized the doctrine of judicial immunity. ***Wheeler v. Stewart***, 798 So. 2d 386, 392 (¶ 14) (Miss. 2001). The Court has declared that "public policy

---

[2] Bailey also stated in her appellate brief that her "cause of action against Judge Weill stems from the four subject February 10, 2015 Orders issued by Judge Weill, and not from any causes of action arising during the time she was employed as Judge Weill's court administrator."

mandates that a judge should have the power to make decisions without having to worry about being held liable for his actions." *Id.* (quoting *Loyacono v. Ellis*, 571 So. 2d 237, 238 (Miss. 1990)). Indeed, the Court "fully recognizes that the best interests of the people and public order require that judges be immune from civil liability." *Loyacono*, 571 So. 2d at 238.

¶19. The *Loyacono* Court recognized that the United States Supreme Court addressed the doctrine of judicial immunity in *Stump v. Sparkman*, 435 U.S. 349 (1978). The *Stump* Court held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump*, 435 U.S. at 355-56 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)).

¶20. In *Loyacono*, an attorney filed suit against a circuit court judge contending that, as a direct and proximate result of the willful, intentional, or negligent acts of the circuit court judge, he was falsely prosecuted, arrested, incarcerated, and denied due process. *Loyacono*, 571 So. 2d at 237. The trial court granted the circuit court judge's motion to dismiss, finding that the doctrine of judicial immunity protected the circuit court judge even if he was motivated by malice. *Id.* The Court affirmed. *Id.* at 239.

¶21. The *Loyacono* Court acknowledged that, while the holding in *DeWitt v. Thompson*, 7 So. 2d 529, 532 (Miss. 1942),[3] seemed to leave open the door as to whether judicial

---

[3] In *DeWitt v. Thompson*, 7 So. 2d 529, 532 (Miss. 1942), the Court stated:

In [*Bradley*] the [United States Supreme] Court went farther, and held that courts of general jurisdiction are not liable to civil actions for their judicial

immunity applies in the face of malice, "[p]ublic policy mandates that a judge should have the power to make decisions without having to worry about being held liable for his actions, and, thankfully, most judges do not exhibit the type of behavior we find in this instance." *Loyacono*, 571 So. 2d at 238. Accordingly, the "Court fully recognizes that the best interests of the people and public order require that judges be immune from civil liability. There are other remedies[4] for the correction of such behavior." *Id.*

¶22. The *Loyacono* Court stated: "There is a distinction between excess of jurisdiction and a complete absence of jurisdiction." *Id.* "Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible." *Bradley*, 80 U.S. at 351-52. Thus, "[t]he key factor in determining whether judicial immunity exists is whether at the time the judge took the challenged action he had jurisdiction over the subject matter before him." *Wheeler*, 798 So. 2d at 392 (¶ 15).

¶23. Bailey argues that Judge Weill is not afforded judicial immunity because his actions were taken in a complete absence of jurisdiction. Bailey contends that Judge Weill had no jurisdictional authority over her individually when he entered the February 2015 orders. However, the question is not whether Judge Weill had jurisdiction over Bailey, *individually*;

---

acts, when such acts are in excess of their jurisdiction, and are charged to have been done maliciously or corruptly. We do not go that far in this case, because, as stated, there was no showing of either corruption or excess of jurisdiction.

[4] "The primary remedy available to those who believe a judge has acted either contrary to or in excess of his/her authority is to file a complaint with the [Mississippi Judicial Performance] Commission." *Mississippi Comm'n of Judicial Performance v. Russell*, 691 So. 2d 929, 947 (Miss. 1997).

the inquiry is "whether at the time the judge took the challenged action he had jurisdiction over the subject *matter* before him." *See id.* (emphasis added).

¶24. The challenged act is the entry of the February 2015 orders disposing of Kelly's motions to recuse and for clarification in multiple criminal cases. Judicial immunity exists in the present case because at the time Judge Weill entered the February 2015 orders, he had jurisdiction over the multiple criminal matters before him.

¶25. Bailey's complaint and amended complaint did not allege that Judge Weill lacked jurisdiction over the criminal *matters* in which he entered the February 2015 orders. Thus, there is no dispute that, at the time Judge Weill entered the February 2015 orders in his capacity as circuit court judge, he had jurisdiction over the criminal matters before him. Instead, Bailey argues that Judge Weill's statement that she had been reprimanded for improper ex parte communications in the February 2015 orders was neither necessary or relevant to the issue before Judge Weill. However, the Court has not recognized a relevance exception to the judicial immunity doctrine. "In order to determine the existence of judicial immunity one must look to whether at the time the judge took the challenged action he had jurisdiction over the subject matter before him." *Loyacono*, 571 So. 2d at 238 (citing *Stump*, 435 U.S. at 356). It is of no consequence that the February 2015 orders disposing of a motion in criminal matters properly before him included a factual finding that mentioned Bailey.

¶26. Bailey also argues that Judge Weill lost his judicial immunity because his alleged defamation of her constituted a nonjudicial act made in the clear absence of all jurisdiction.

10

However, the *Loyacono* Court rejected the argument that allegations of malice remove the protection of judicial immunity.

¶27. We hold that the trial court erred by failing to grant Judge Weill's motion to dismiss Bailey's complaint and amended complaint based on judicial immunity.

## CONCLUSION

¶28. The Court has held that judges of courts of general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. *Loyacono*, 571 So. 2d at 238. Here, Judge Weill entered the February 2015 orders disposing of the public defender's motions to recuse and for clarification in four criminal matters that were properly before him. Even though Bailey alleged that the language contained in the orders contained libelous language, Judge Weill is afforded judicial immunity from Bailey's civil action because at the time he entered the February 2015 orders, he had jurisdiction over the subject matter before him. *See id; Wheeler*, 798 So. 2d at 392 (¶ 14). As a result, the Court reverses the trial court's order and remands the case for further proceedings consistent with the Court's opinion.

¶29. **REVERSED AND REMANDED.**

**DICKINSON AND RANDOLPH, P.JJ., KITCHENS, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J. WALLER, C.J., NOT PARTICIPATING.**

**KING, JUSTICE, SPECIALLY CONCURRING:**

11

¶30. While I agree with the majority that, under the law as it stands, judicial immunity applies to this case, I write separately to express my concern regarding the alleged judicial behavior in this case.

¶31. Bailey essentially alleges that Judge Weill made false statements about her in a court order, and that Judge Weill had no jurisdiction to make these statements, presumably because Bailey believes that these statements were irrelevant to the crux of the order.[5] I find it concerning that this opinion may allow judges to claim judicial immunity for any gratuitous remarks made in an opinion or order, so long as the judge has overall authority to promulgate the opinion or order in the first place.[6]

¶32. As the majority indicates, "*DeWitt v. Thompson*, 7 So. 2d 529, 532 (Miss. 1942), seemed to leave open the door as to whether judicial immunity applies in the face of malice[.]" Maj. Op. ¶ 21. I believe that this Court may need to revisit this notion at a later date, especially when, as here, the actions were alleged to have been taken with malice and were allegedly irrelevant to the underlying judicial action.

**KITCHENS, J., JOINS THIS OPINION.**

---

[5]A more thoroughly developed record could help prove or disprove these allegations, and would have helped us make a more informed decision regarding judicial immunity. Without a more developed record or any findings of fact by the trial court, I certainly take no position on whether these allegations are true.

[6]For example, in a divorce proceeding, if a chancellor had a personal vendetta against a party's sister who was estranged from the party and had no relevance to the divorce or custody issues, could that chancellor in the divorce order falsely state that the party's sister was a prostitute and receive judicial immunity for making that statement?

12