# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00280-SCT

*MARILYN NEWSOME, INDIVIDUALLY AND AS CONSERVATOR/CONSERVATRIX OF VICTORIA NEWSOME*

*v.*

*DAVID SHOEMAKE AND JOE DALE WALKER*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/29/2016 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| TRIAL COURT ATTORNEYS: | W. TERRELL STUBBS |
| | KRISSY CASEY NOBILE |
| | ROBERT BENTON EVANS |
| | G. ROBERT PARROTT, II |
| | DANNY ALTON DRAKE |
| | HAROLD EDWARD PIZZETTA, III |
| | WILLIAM C. BRABEC |
| | ALEXANDER FREDERICK GUIDRY |
| | LAUREN CAVALIER STUBBS |
| | MARC E. BRAND |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LAUREN CAVALIER STUBBS |
| | W. TERRELL STUBBS |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KRISSY CASEY NOBILE |
| | HAROLD EDWARD PIZZETTA, III |
| | ROBERT E. EVANS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 09/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS AND CHAMBERLIN, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.    This civil action arises from the mishandling of the Conservatorship of Victoria Newsome. Victoria Newsome's mother and conservator, Marilyn Newsome, filed the instant suit in the Chancery Court of Simpson County against former chancellor Joe Dale Walker, Chancellor David Shoemake, and other parties. The Chancery Court of Simpson County granted dismissal pursuant to Mississippi Rule of Civil Procedure 54(b) to Walker and Judge Shoemake on the basis of judicial immunity. Marilyn Newsome appeals. We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.    Joe Dale Walker, who was at the time the senior chancellor for the Thirteenth Chancery Court District,[1] appointed Marilyn Newsome as conservator of the person and estate of her disabled adult daughter, Victoria Newsome, on July 13, 2010, and issued Letters of Conservatorship to her on July 21, 2010. Victoria's severely infirm condition was the result of medical malpractice.

¶3.    Marilyn Newsome's counsel in her daughter's medical malpractice case, Charles Merkel III, filed a "Petition for Authority to Compromise and Settle Disputed Claim, For Approval and Establishment of Trust, and For Other Relief" on January 10, 2011. Marilyn Newsome asked that the settlement proceeds be distributed as follows:

| $1,239,633.11 | Merkel & Cocke, P.A |
|---|---|
| $8,384.09 | Medicaid for its lien; |
| **$145,000.00** | **For purchase of home located at 657 Hwy 149, Magee, MS** |
| $25,000.00 | To Marilyn [Newsome] for payment of taxes, insurance, utility deposits |
| $17,255.05 | Marilyn [Newsome] for past services and expenses |

[1] The Thirteenth Chancery Court District is comprised of Covington, Jefferson Davis, Lawrence, Simpson, and Smith Counties.

| $1,057.00 | Keely McNulty, Esq., for legal services rendered in custody matter |
| $1,000,000.00 | To purchase structured settlement annuity |
| $563,670.75 | To SPECIAL NEEDS TRUST |
| $3,000,000.00 | |

¶4.     On January 13, 2011, Walker authorized the distribution of the settlement proceeds as follows:

| $1,238,005.61 | Merkel & Cocke, P.A. |
| $8,384.09 | Medicaid |
| $17,255.05 | To Marilyn [Newsome] for past services and expenses |
| $5,000.00 | Keely McNulty, Esq., for legal services in child custody matter |
| $1,000,000.00 | To purchase annuity |
| $729,727.75 | To Merkel & Cocke, P.A., Trust Account |
| $2,998,372.50 | |

According to the complaint, Walker did not approve the purchase of the home as requested in the petition. The chancellor increased McNulty's requested attorney fee from $1,057 to $5,000, and his disbursement of conservatorship funds failed to account for $1,627.50. Marilyn Newsome then opened a checking account at Peoples Bank for the conservatorship.

¶5.     On March 21, 2011, Judge Walker allegedly entered an *ex parte* order in which he summarily denied a petition which had sought his approval for the purchase a home for Victoria Newsome and her family. In the same *ex parte* order, Judge Walker decreed that real property and a mobile home were to be purchased and that money was to be deposited into the conservatorship account to fund both purchases and to fund the construction and maintenance of a new home. In addition, Judge Walker ordered that Marilyn Newsome be paid $1,450 for expenses and that McNulty be paid $5,800 for legal services. According to

the complaint, no petition requesting any of the relief Walker ordered appeared in the conservatorship record.[2]

¶6. Marilyn Newsome alleges in the complaint that McNulty prepared and Judge Walker signed other *ex parte* orders with no petitions having been filed and no findings or adjudications having been made on the record. The complaint states that these orders related to the purchase of real property, the purchase of a mobile home, and the construction of a "special needs home." McNulty prepared and Judge Walker signed orders awarding attorney fees to McNulty in the absence of itemized statements of hours or an hourly rate.

¶7. Judge Walker assigned to McNulty the task of obtaining at least four construction bids. C.T. Construction, a construction company owned by Walker's nephew, Chad Teater, submitted the lowest bid . Accordingly, on July 22, 2011, Walker transferred the case, by *ex parte* order, to Judge David Shoemake, the other chancellor for the Thirteenth Chancery Court District, "'for the limited purpose of approving and acceptance of the bid(s) for the construction of the home for the ward. Upon approval and acceptance, the cause is to be transferred back to Honorable Joe Dale Walker, Post 2.'" Marilyn alleges that "[n]o pleading was filed requesting said transfer and the record does not reflect any findings that supported a transfer of the case."

¶8. That same day, Judge Shoemake authorized Marilyn Newsome to accept the lowest bid of $273,075.14 from C.T. Construction and transferred the case back to Walker. According to Marilyn Newsome's complaint, Judge Shoemake, on July 28, 2011, signed

---

[2] The record of the conservatorship is not included in the present record.

4

another *ex parte* order approving C.T. Construction's "Construction Management Agreement" and authorizing Marilyn Newsome, as conservator, to make payments. The agreement, which allegedly had been prepared and presented by McNulty, required, in addition to the payment of $273,075.14, a flat fee of $30,000. Judge Shoemake then, on August 2, 2011, signed an order authorizing Merkel & Cocke, P.A., to transfer $258,395.14 from the conservatorship escrow account for the construction of the ward's new home. According to the complaint filed by the Mississippi Commission on Judicial Performance against Judge Shoemake, "[n]o petition requesting that relief was ever filed, and [Marilyn Newsome] never gave her permission nor had knowledge of that request for relief."

¶9. Judge Walker, on January 20, 2012, entered an order, *nunc pro tunc* to January 12, 2011, in which he appointed McNulty guardian *ad litem* for Victoria Newsome[3] in the absence of a petition or a hearing. Judge Walker, according to the complaint, merely found that appointing McNulty was in Victoria Newsome's best interest. Allegedly at the request of Walker, on January 24, 2012, McNulty, as Victoria Newsome's guardian *ad litem*, filed a Show Cause Petition requesting that Marilyn Newsome be ordered to show cause why she should not be held in contempt as conservator because certain facts and circumstances "adverse to the personal and financial health and well-being of Victoria" had come to McNulty's attention.

---

[3] McNulty served as attorney for the conservatorship, as guardian *ad litem* for Victoria Newsome, and as "the law clerk for both Walker and Shoemake . . . ." ***Miss. Comm'n on Judicial Performance v. Shoemake***, 191 So. 3d 1211, 1213 n.1 (Miss. 2016).

¶10. That same day, McNulty filed a petition requesting an additional $23,000 from the ward's funds to pay for materials belonging to C.T. Construction which allegedly had been stolen from the construction site. According to the complaint, the petition alleged that "the total home construction amount of $326,075.14 ($273,075.14 + $30,000.00 + $23,000.00) still [would] be lower than any other bid submitted," but "there were no bids filed in the court record." On January 25, 2012, "in spite of having transferred the case back to Judge Walker, [Judge Shoemake] signed an order directing payment of $23,000 to C.T. Construction for the allegedly stolen materials."

¶11. McNulty moved to withdraw as a counsel for the conservatorship on March 20, 2012. On April 17, 2012, McNulty moved to withdraw from her position as guardian *ad litem* for Victoria, allegedly attaching to the petition "an itemized statement of her legal services without any itemization of time or hourly rates." McNulty again sought to withdraw, on April 24, 2012, from both her position as guardian *ad litem* and as counsel for the conservator. Judge Walker signed an *ex parte* order allowing McNulty's withdrawal on May 14, 2012.

¶12. Judges Walker and Shoemake entered a joint order of recusal dated October 13, 2013, "at the direction of the Judicial Performance Commission." Marilyn Newsome avers in her complaint that Judges Walker and Shoemake had "instructed the Chancery Court to disregard the Order of Recusal and omit it from the court file." Each thereafter executed separate orders of recusal.

¶13. The Commission on Judicial Performance filed a petition for interim suspension of Walker on January 2, 2014. This Court "suspended Judge Walker from the performance of

6

his duties of his office, with pay, during the pendency of the Commission's inquiry." ***Miss. Comm'n on Judicial Performance v. Walker***, 172 So. 3d 1165, 1166 (Miss. 2015). Later, this Court determined that Judge Walker had resigned from his judicial office, "having pled guilty in the United States District Court for the Southern District of Mississippi to the felony of obstruction of justice."[4] ***Id.*** Ultimately, this Court formally removed Judge Walker from office, "'due to the seriousness of his admitted criminal acts and judicial misconduct.'" ***Id.*** at 1168 (quoting ***Miss. Comm'n on Judicial Performance v. DeLaughter***, 29 So. 3d 750, 755 (Miss. 2010)).

¶14. The Mississippi Commission on Judicial Performance recommended Judge Shoemake's removal from office. ***Miss. Comm'n on Judicial Performance v. Shoemake***, 191 So. 3d 1211, 1212 (Miss. 2016). But this Court determined that, while "Judge Shoemake's negligence and inattention while executing ex parte orders resulted in the dissipation of assets from Victoria Newsome's Conservatorship," such did not warrant removal from office. ***Id.*** at 1224. Instead, in addition to imposing a $2,500 fine and ordering that Judge Shoemake pay court costs, this Court ordered that Judge Shoemake receive a public reprimand and a thirty-day suspension from office without pay. ***Id.***

¶15. In the instant case, Marilyn Newsome filed a Complaint, Request for Full Accounting and Inventory, for Return of Funds, for Attorney Fees, and for Other Relief in the Chancery Court of Simpson County on February 9, 2015. She filed an Amended Complaint, Request

---

[4]Both Walker and Teater pled guilty in federal court to obstruction of justice and were sentenced to five months' imprisonment, five months' home confinement, and two-year terms of supervised release.

for Full Accounting and Inventory, for Return of Funds, for Attorney Fees, and for Other Relief in the Chancery Court of Simpson County on February 11, 2016. The defendants included Peoples Bank, its employee Chris Dunn, Keely McNulty, Judge David Shoemake, Joe Dale Walker, and Chad Teater. Marilyn Newsome alleged that defendants had misappropriated funds, committed malpractice, and committed civil rights violations under 42 U.S.C. § 1983. She further alleged conspiracy, fraud, breach of contract, breach of implied warranties and other warranties, breach of fiduciary duties, negligence, negligence *per se*, gross negligence, and intentional infliction of emotional distress. Marilyn Newsome demanded "a full accounting and inventory of Plaintiff Victoria Newsome's Conservatorship account." For each of the other claims, Marilyn Newsome sought a monetary sum "sufficient to fully compensate Plaintiffs for actual and punitive damages . . . , together with prejudgment interest and post-judgment interest and all costs related to this civil action."

¶16. In the wake of the recusals of Judges Walker and Shoemake, Judge Hollis McGehee was assigned to oversee the conservatorship proceedings. Because the civil action had been filed in the conservatorship proceedings, Judge McGehee *sua sponte* severed the civil action from the conservatorship. Because Judge McGehee subsequently recused, Judge Gerald Martin was assigned to hear the case, but he recused shortly thereafter. This Court then appointed Judge James D. Bell as special chancellor to hear the civil action.

¶17. Judge Shoemake filed a motion to dismiss, arguing that he is entitled to absolute judicial immunity, that "the Mississippi Tort Claims Act provides additional layers of immunity to" him, and that, "to the extent [he] is sued in his official capacity under § 1983,

8

such an attempted claim immediately fails because neither the state nor its officials acting in their official capacities are 'persons' under § 1983." Alongside his motion to dismiss, Judge Shoemake asked for a stay of discovery, arguing that "immunity must be considered and resolved before the significant expense of needless discovery is undertaken . . . ." Joe Dale Walker filed a "Joinder in Judge Shoemake's Motion to Stay and Motion to Dismiss."

¶18.    Marilyn Newsome then filed a Motion to Disqualify Jim Hood, Attorney General [of the] State of Mississippi[,] as Counsel for Defendant, David Shoemake." She argued that "[i]nstead of referring the Complaint to the Vulnerable Adult Division and opening a criminal investigation and representing the victim in this matter, the Attorney General's Office has chosen to enter its appearance on behalf of Defendant[] Shoemake and ignore the apparent conflicts of interest." According to Marilyn Newsome, "[o]ne would assume that the Attorney General's Office would be inclined to help those persons that cannot help themselves." But "the Attorney General has chosen to ridicule the Plaintiff for seeking relief for damages her daughter, Victoria, has sustained at the hands of the above-named defendants, including David Shoemake, a sitting Chancery Judge."

¶19.    The trial court stayed discovery as to Walker and Judge Shoemake. It also denied Marilyn Newsome's motion to disqualify the Attorney General, finding that "it does not appear from the record that the Attorney General ever initiated an attorney-client relationship with the Plaintiff and it does not appear from the record that the Plaintiff reasonably believed that the Attorney General was her attorney." After a hearing, the trial court granted dismissal,

9

pursuant to Mississippi Rule of Civil Procedure 54(b),[5] both to Walker and Judge Shoemake on the basis of the doctrine of judicial immunity. The trial court denied Marilyn Newsome's "Motion to Set Aside and Vacate Order Granting Defendant Shoemake's Motion to Stay Discovery and Order Denying Plaintiff's Motion to Disqualify Attorney General and for Record to be Made," but ordered "that a record shall be made of all Motions and other matters in this case."

¶20.    Aggrieved, Marilyn Newsome has appealed. She argues that the trial court erred in granting dismissal pursuant to Mississippi Rule of Civil Procedure 54(b) to Walker and Judge Shoemake on the basis of judicial immunity, that the trial court erred in granting a stay of discovery to Walker and Judge Shoemake, that the trial court erred in denying her motion to disqualify the Attorney General, and that the chancellor erred in denying her motion to vacate. We consider each argument in turn.

---

[5] Mississippi Rule of Civil Procedure 54(b) provides:

**(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Miss. R. Civ. P. 54(b).

10

## DISCUSSION

**1.  Whether the trial court properly applied the doctrine of judicial immunity in granting dismissal pursuant to Mississippi Rule of Civil Procedure 54(b) to Walker and Judge Shoemake.**

*Standard of Review*

¶21.    Judge Shoemake filed his motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6), and Walker joined that motion. This Court reviews a trial court's grant of a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6) *de novo*. ***Crum v. City of Corinth***, 183 So. 3d 847, 850 (Miss. 2016). "A Rule 12(b)(6) motion 'tests the legal sufficiency of the complaint.'" ***Id.*** (quoting ***Little v. Miss. Dep't of Transp.***, 129 So. 3d 132, 135 (Miss. 2013)). "The allegations in the complaint must be taken as true, and there must be no set of facts that would allow the plaintiff to prevail." ***Rose v. Tullos***, 994 So. 2d 734, 737 (Miss. 2008) (citing ***Ralph Walker, Inc. v. Gallagher***, 926 So. 2d 890, 893 (Miss. 2006)).

*Whether the trial court properly entered its order pursuant to Mississippi Rule of Civil Procedure 54(b).*

¶22.    The trial court dismissed Walker and Judge Shoemake pursuant to Mississippi Rule of Civil Procedure 54(b), which directs that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment." Miss. R. Civ. P. 54(b). Marilyn Newsome first argues that the trial court's dismissal pursuant to Mississippi Rule of Civil Procedure 54(b) was erroneous because "[i]n this case there were multiple causes of action that arose from a single set of

11

facts" and "[g]ranting Rule 54(b) certification as a practical matter, would result in piecemeal litigation . . . ."

¶23.    "'On appeal a 54(b) final judgment may be reviewed and reversed if this Court finds the trial judge abused his discretion in entering the final judgment.'" *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 512 So. 2d 897, 899 (Miss. 1987) (quoting *Indiana Lumbermen's Mutual Ins. Co. v. Curtis Mathis Mfg. Co.*, 456 So. 2d 750, 753 (Miss. 1984)). In *Cox*, this Court observed that "Howard, Weil should have . . . made a motion to dismiss the appeal rather than assigning it as error in its brief on direct appeal." *Cox*, 512 So. 2d at 899. Nevertheless, the *Cox* Court found "plain error in the improvident granting of this judgment" and dismissed the appeal. *Id.* The Court held that "Rule 54(b) judgments must be reserved for rare and special occasions" and that:

> When there is a judgment dismissing one count of a complaint or counterclaim, a Rule 54(b) finality should never even be considered by the trial court unless the remainder of the case is going to be inordinately delayed, and it would be especially inequitable to require a party to wait until the entire case is tried before permitting him to appeal.

*Id.* at 900.

¶24.    By contrast, this Court observed that, in another case in which the circuit court had "entered a Rule 54(b) final judgment dismissing the complaint against one of the parties," on "appeal we held the entry of judgment was proper." *Cox*, 512 So. 2d at 899 (citing *Indiana Lumbermen's*, 456 So. 2d at 753). In *Indiana Lumbermen's*, this Court stated that:

> In cases involving multiple parties, a trial judge is authorized to enter a final judgment when it terminates the case as to one or more of the parties. When a trial judge makes an expressed determination that there is no just reason for delay and enters a final judgment, that judgment is released for appellate

12

consideration. 10 Wright & Miller, § 2659, p. 97. This authority should be exercised cautiously in the interest of sound judicial administration in order to preserve the established judicial policy against piecemeal appeals. *Curtiss-Wright Corporation v. General Electric Company*, 446 U.S. 1, 8, 100 S. Ct. 1460, 1465, 64 L. Ed. 2d 1, 11 (1980); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435, 438, 76 S. Ct. 895, 899, 901, 100 L. Ed. 1297 (1956); *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 450, n.5, 76 S. Ct. 904, 907, n.5, 100 L. Ed. 1311 (1956).

*Indiana Lumbermen's*, 456 So. 2d at 752-53. In that case, this Court affirmed the trial court's grant of dismissal to one of the defendants, finding that "[t]he charges of negligence against the two defendants are on different theories and are unrelated." *Id.* at 753. Therefore, "there was no reason for [the defendant] to be kept in the case." *Id.* at 753.

¶25.    At the outset, we note that Marilyn Newsome has not asked this Court to dismiss the appeal. Instead, she raises the issue in her brief on direct appeal. This Court, therefore, must review the trial court's Rule 54(b) certification for plain error. *See Cox*, 512 So. 2d at 899. In this case, multiple causes of action were alleged against multiple parties. The trial court granted Rule 54(b) dismissal to Walker and Judge Shoemake because it determined that the doctrine of judicial immunity barred Marilyn Newsome's claims against them. Accordingly, the trial court found "no just reason for delay" in entering a final, appealable judgment in favor of Walker and Judge Shoemake.  No plain error appears on the face of the trial court's decision; therefore, this Court should find that any objection to the certification, itself, is procedurally barred. Procedural bar notwithstanding, because application of judicial immunity is dispositive, the trial court did not abuse its discretion in certifying the judgment of dismissal as a final, appealable judgment under Rule 54(b). Moreover, if Walker and Judge Shoemake are entitled to immunity, "it would be especially inequitable to require

13

[them] to wait until the entire case is tried before permitting [them] to appeal." *Cox*, 512 So. 2d at 900.

> *Whether the doctrine of judicial immunity operates to bar Marilyn Newsome's claims against Walker and Judge Shoemake.*

¶26. Marilyn Newsome claims that the trial court erred in dismissing this case on the basis of judicial immunity."Mississippi has long recognized the doctrine of judicial immunity." *Weill v. Bailey*, 2017 WL 1295370, *4 (Miss. Apr. 6, 2017) (citing *Wheeler v. Stewart*, 798 So. 2d 386, 392 (Miss. 2001)). The rationale in support of application of the doctrine of judicial immunity has been referenced by this Court: "[p]ublic policy mandates that a judge should have the power to make decisions without having to worry about being held liable for his actions . . . ." *Loyacono v. Ellis*, 571 So. 2d 237, 238 (Miss. 1990).

¶27. This Court has analyzed precedent from the United States Supreme Court in considering whether the doctrine of judicial immunity applies. In *Loyacono*, the Court looked to *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978), in which "an Indiana circuit court judge approved a mother's petition to have her 'somewhat retarded' minor daughter sterilized." *Loyacono*, 571 So. 2d at 238 (citing *Stump*, 435 U.S. at 351). "It [w]as not until after she was married some two years later that the daughter learned the true nature of the operation, and upon discovery both she and her husband sued the judge, among others." *Loyacono*, 571 So. 2d at 238 (citing *Stump*, 435 U.S. at 353). The United States Supreme Court applied the doctrine of judicial immunity:

> As early as 1872, the Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon

his own convictions, without apprehension of personal consequences to himself." . . . For that reason the Court held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."

*Stump*, 435 U.S. at 355-56 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347, 352, 20 L. Ed. 646, 13 Wall. 335 (1871)).

¶28.    In *Loyacono*, 571 So. 2d at 237, an attorney sued a circuit judge, claiming "that as a direct and proximate result of the willful, intentional or negligent acts of [the judge], he was falsely prosecuted, arrested, incarcerated and denied due process." This Court, after considering the above-referenced precedent from the United States Supreme Court, observed that "[t]here is a distinction between excess of jurisdiction and a complete absence of jurisdiction." *Id.* at 238 (citing *Bradley*, 80 U.S. at 351-52). "In order to determine the existence of judicial immunity one must look to 'whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him.'" *Loyacono*, 571 So. 2d at 238 (quoting *Stump*, 435 U.S. at 356).

¶29.    Nevertheless, the Court noted the following:

> In [*Bradley*] the [United States Supreme Court] went farther, and held that courts of general jurisdiction are not liable to civil actions for their judicial acts, when such acts are in excess of their jurisdiction, and are charged to have been done maliciously or corruptly. *We do not go that far in this case, because, as stated, there was no showing of either corruption or excess of jurisdiction*.

*Loyacono*, 571 So. 2d at 238 (quoting *DeWitt v. Thompson*, 192 Miss. 615, 7 So. 2d 529, 532 (1942)) (emphasis in *Loyacono*). According to the *Loyacono* Court, such language left "open the door as to whether judicial immunity applies in the face of malice . . . ." *Loyacono*,

571 So. 2d at 238. Ultimately, the Court found that judicial immunity applied and observed that "the best interests of the people and public order require that judges be immune from civil liability." *Id.*

¶30.     The distinction between lack of jurisdiction and excess of jurisdiction was explained further by the United States Supreme Court in *Stump*:

> In *Bradley*, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7 (citing *Bradley*, 80 U.S. at 352).

¶31.     More recently, this Court considered a case in which a circuit court judge's former court administrator sued the judge for libel after he had included a footnote in four separate orders in criminal cases which stated "that [the former court administrator] had been reprimanded by [the judge] for engaging in improper ex parte communications while she was his court administrator . . . ." *Weill*, 2017 WL 1295370, at * 1.

¶32.     The former court administrator argued that the judge's actions "were taken in a complete absence of jurisdiction" and that the judge "had no jurisdictional authority over her individually when he entered the . . . orders." *Id.* at *5. But the Court observed, "the question is not whether [the judge] had jurisdiction over [the former court administrator] *individually*," but rather "'whether at the time the judge took the challenged action he had jurisdiction over the subject *matter* before him.'" *Id.* (quoting *Wheeler*, 798 So. 2d at 392)

16

(emphasis in *Weill*). According to the Court, "[j]udicial immunity exists in the present case because at the time [the judge] entered . . . orders, he had jurisdiction over the multiple criminal matters before him." *Weill*, 2017 WL 1295370, at *5.

¶33. Moreover, the Court rejected the former court administrator's argument that the judge's "alleged defamation of her constituted a nonjudicial act made in the clear absence of all jurisdiction" because the *Loyacono* Court had "rejected the argument that allegations of malice remove the protection of judicial immunity." *Id.*

¶34. Here, Marilyn Newsome alleges that Walker and Judge Shoemake acted either in excess of jurisdiction or in the clear absence of jurisdiction by mishandling her disabled daughter's conservatorship: "[t]he actions taken by both Chancellors in the conservatorship . . . were non-judicial in nature or such actions were taken in the complete absence of all jurisdiction." As to Walker, she argues that "[i]t is clear from Joe Dale Walker's agreement to plead guilty for improperly influencing a federal investigation into this case that he committed acts that are not considered 'judicial' in nature, therefore exposing him to civil liability."

¶35. But while Walker's agreement to plead guilty to obstruction of justice relates to his actions in the mishandling of the conservatorship, it bears no relationship to whether Walker acted in excess of jurisdiction or in the absence of jurisdiction. The conduct which is the subject of the civil action against Walker relates solely to his mishandling of the conservatorship, all of which he did while acting in a judicial capacity. Walker's "guilty plea related to a charge of attempting to corruptly influence a witness subpoenaed to appear

17

before a Federal Grand Jury proceeding and attempting to impede the provision of documents by the witness to the Federal Grand Jury with the intent to influence the outcome of the proceeding . . . ." ***Walker***, 172 So. 3d at 1167.

¶36.    The plaintiff in the present civil action does not allege that Walker lacked jurisdiction of the subject matter of the conservatorship. *See **Loyacono***, 571 So. 2d at 238. And even if Walker did act corruptly in his handling of the conservatorship, under this Court's well-established precedent, he is immune from civil liability. *See **Loyacono***, 571 So. 2d at 238; ***Weill***, 2017 WL 1295370, at *5. Indeed, Walker has experienced "'[t]he primary remedy available to those who believe a judge has acted either contrary to or in excess of his/her authority,'" namely, a complaint filed with the Mississippi Commission on Judicial Performance. ***Weill***, 2017 WL 1295370, at *4 n.4 (quoting ***Miss. Comm'n on Judicial Performance v. Russell***, 691 So. 2d 929).

¶37.    As to Judge Shoemake, the plaintiff claims that he "conspired with [then-Judge] Joe Dale Walker to try to cover up the misappropriation of funds, in which he had no jurisdiction to act thereby exposing him to civil liability" and that he "continued his attempt to cover up the misappropriation of funds by his non-judicial acts taken before the Commission on Judicial Performance, which charged him with committing perjury." But while the Commission on Judicial Performance had "recommended to the Supreme Court that Judge Shoemake be removed from office, fined $2,500, and assessed costs in the amount of $5,882.67," this Court held that the Commission had failed to "prove by clear and convincing evidence that Shoemake gave testimony that he knew or should have known would be

18

misleading." **Shoemake**, 191 So. 3d at 1213. Instead, the Court determined that "Judge Shoemake's negligence and inattention while executing ex parte orders resulted in the dissipation of assets from Victoria Newsome's Conservatorship." **Id.** at 1224.

¶38. The plaintiff in the case at bar does not allege that Judge Shoemake lacked jurisdiction of the subject matter of the conservatorship. *See* **Loyacono**, 571 So. 2d at 238. And even if the Court accepts as true the plaintiff's allegation that Judge Shoemake acted corruptly in his handling of the conservatorship, under this Court's precedent, he is immune from civil liability. *See* **Loyacono**, 571 So. 2d at 238; **Weill**, 2017 WL 1295370, at *5. Judge Shoemake, like Walker, has experienced "'[t]he primary remedy available to those who believe a judge has acted either contrary to or excess of his/her authority,'" a complaint filed with the Mississippi Commission on Judicial Performance. **Weill**, 2017 WL 1295370, at *4 n.4 (quoting **Miss. Comm'n on Judicial Performance v. Russell**, 691 So. 2d 929, 947 (Miss. 1997)).

¶39. Further, Marilyn Newsome claims that immunity is inapplicable to Walker and Judge Shoemake because "[t]he actions of both Chancellors taken throughout the history of the conservatorship were actions not in the best interest of the Ward and conservatorship and it is clear that the Chancellors were not acting as the 'ultimate guardian' of the Ward in this matter." Nevertheless, accepting Marilyn Newsome's claims as true, as this Court is bound to do at the motion to dismiss stage, Walker and Judge Shoemake are immune because, at the time the alleged acts giving rise to Newsome's claims occurred, both chancellors exercised jurisdiction over the subject matter of the conservatorship. *See* **Loyacono**, 571 So. 2d at 238.

19

¶40. Because the doctrine of judicial immunity bars Marilyn Newsome's claims, we affirm dismissal of the claims as to Walker and Judge Shoemake.

> *Whether Walker and Judge Shoemake are entitled to immunity on the state law claims by virtue of the Mississippi Tort Claims Act.*

¶41. Having found the doctrine of judicial immunity applicable, we need not address the argument advanced by Walker and Judge Shoemake that state law, specifically the Mississippi Tort Claims Act, Mississippi Code Section 11-46-9(1)(a), confers additional immunity.

### 2. Whether the trial court erred in granting a stay of discovery to Walker and Judge Shoemake.

¶42. Marilyn Newsome avers that the trial court committed reversible error by granting Shoemake's motion to stay discovery, which Walker joined.

¶43. "'Trial Courts are afforded broad discretion in discovery matters, and this Court will not overturn a trial court's decision unless there is an abuse of discretion.'" *Ferguson v. Univ. of Miss. Med. Ctr.*, 179 So. 3d 1060, 1064 (Miss. 2015) (quoting *Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 981 (Miss. 2014)). "'[I]f the trial court applies the "correct legal standard," we must affirm the decision, regardless of what any of us individually might have ruled had we been the judge, unless there is a "definite and firm conviction that the court below committed clear error."'" *Ferguson*, 179 So. 3d at 1064 (quoting *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (quoting *City of Jackson v. Rhaly*, 95 So. 3d 602, 607 (Miss. 1990))).

¶44.    The sole case upon which Marilyn Newsome relies in support of her argument is

***Stanley v. Scott Petroleum Corp.***, 184 So. 3d 940 (Miss. 2016). But there, the issue was

whether the trial court's grant of summary judgment had been premature when only written

discovery had been completed and the plaintiffs had sought, pursuant to Mississippi Rule of

Civil Procedure 56(f)[6] to "obtain affidavits, take depositions and complete discovery."

***Stanley***, 184 So. 3d at 941. Specifically, the plaintiffs had "asked the court to refrain from

determining foreseeability (and therefore whether Scott Petroleum owed the plaintiffs a duty)

until . . . the expert reports were in, and the plaintiffs had deposed Scott Petroleum." ***Id.*** at

941-42. This Court found that "plaintiffs in this case complied with Rule 56(f) by presenting

specific facts indicating why additional time for discovery would assist them in opposing the

motion for summary judgment" and that the trial court had "ruled that Scott Petroleum owed

no duty without first allowing the plaintiffs to conduct sufficient discovery to determine if

a duty had arisen." ***Id.*** at 943.

---

[6] Mississippi Rule of Civil Procedure 56(f) provides:

**(f) When Affidavits Are Unavailable.** Should it appear from the affidavits
of a party opposing the motion that he cannot for reasons stated present by
affidavit facts essential to justify his opposition, the court may refuse the
application for judgment or may order a continuance to permit affidavits to be
obtained or depositions to be taken or discovery to be had or may make such
order as is just.

Miss. R. Civ. P. 56(f).

¶45. Here, due to the trial court's grant of dismissal, Marilyn Newsome claims that she "was not fully able to understand Shoemake's[7] involvement and civil liability . . . ." But, unlike in *Stanley*, at issue here is a granted motion to dismiss. "A motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law . . . ." *Rose*, 994 So. 2d at 737 (citing *Cook v. Brown*, 909 So. 2d 1075, 1077-78 (Miss. 2005)). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Rose*, 994 So. 2d at 737 (citing *Cook*, 909 So. 2d at 1078). And, as discussed above, judicial immunity is a question of law: "'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" *Loyacono*, 571 So. 2d at 238 (citing *Stump*, 435 U.S. at 355-56).

¶46. The trial court did not abuse its discretion in staying discovery when Judge Shoemake raised judicial immunity in a Rule 12(b)(6) motion to dismiss.

### 3. Whether the trial court erred in denying Marilyn Newsome's motion to disqualify the Attorney General.

¶47. Marilyn Newsome asserts on appeal that "[t]he Chancellor's factual findings in not disqualifying the Attorney General from representing David Shoemake in this matter is [sic] clearly erroneous  because the court's factual findings are against the weight of all the evidence . . . ."

---

[7] Marilyn Newsome does not claim on appeal that the trial court committed reversible error by staying discovery as to ex-Chancellor Walker.

¶48. She claims that, after the instant civil lawsuit had been filed, "[i]nstead of referring the Complaint to the Vulnerable Adult Division and opening a criminal investigation and representing the victim in this matter, the Attorney General's Office chose to enter its appearance on behalf of Appellee." Marilyn Newsome claims that, because the Attorney General had a duty to investigate the possible criminal conduct of Judge Shoemake, he "has failed Victoria in this matter by ignoring apparent criminal conduct." She continues: "If the Office of Attorney General has conducted an investigation into this matter, then the office is disqualified under Rule 3.7 as a potential witness for Plaintiff and Rule 1.9(b) of the Miss. Rules of Professional Conduct . . . ." She also claims that, because "the Attorney General's Office works closely with the FBI and the U.S. Attorney's Office investigating crimes and other matters in the State of Mississippi," and because the "FBI and the U.S. Attorney's Office were involved in the investigation, prosecution and convictions of Walker and Teater," the Attorney General is disqualified from representing Judge Shoemake in this matter."

¶49. "Little case law exists in Mississippi with regard to the standard of review of a trial court's decision of a motion to disqualify an attorney." *Byrd v. Bowie*, 933 So. 2d 899, 906 (Miss. 2006) (quoting *Colson v. Johnson*, 764 So. 2d 438, 439 (Miss. 2000)). "'In *Quick Change Oil & Lubrication Co. v. County Line Place, Inc.*, 571 So. 2d 968, 970 (Miss. 1990), we held that the manifest error standard applies to review of findings of fact and that the [trial] court has broad discretion.'" *Williams v. Bell*, 793 So. 2d 609, 611 (Miss. 2001) (quoting *Colson*, 764 So. 2d at 439). This Court has held that "one seeking to disqualify an

23

attorney must show that[:] (1) there was an actual attorney-client relationship between the movant and the attorney; *and*, (2) there was a substantial relationship between the subject matter of the prior and current representation." **Williams**, 793 So. 2d at 612 (citing **Pearson v. Singing River Med. Ctr., Inc.**, 757 F. Supp. 768, 771 (S.D. Miss. 1991)) (emphasis added).

¶50.    The trial court, in denying the motion to disqualify, ruled that "it does not appear from the record that the Attorney General ever initiated an attorney-client relationship with the Plaintiff and it does not appear from the record that the Plaintiff reasonably believed that the Attorney General was her attorney."

¶51.    In her brief before this Court and in her motion to disqualify, Marilyn Newsome states that "[i]f the Attorney General has not opened a criminal investigation, then Marilyn respectfully requests that the Attorney General open an investigation immediately." In support of her argument on appeal, Marilyn Newsome, citing only the Attorney General's website, argues that the "Attorney General is tasked by the people of the State of Mississippi to investigate and prosecute persons who abuse, neglect or exploit vulnerable persons." She further cites Rules 3.7 and 1.9(b) of the Mississippi Rules of Professional Conduct. Rule 3.7(a) provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." Miss. R. Prof'l Conduct 3.7(a). Rule 1.9(b) prohibits a lawyer from using "information relating to the representation to the disadvantage of a former client . . . ." Miss. R. Prof'l Conduct 1.9(b).

24

¶52.    In response, Judge Shoemake argues that "[t]he Attorney General is not a party to the Newsome lawsuit against Judge Shoemake, was not involved in the conservatorship proceedings from which the lawsuit stems, and certainly will not be a necessary witness—or a witness at all—in the instant litigation." According to Judge Shoemake, the same is true of the assistant attorneys general in the Civil Litigation Division of the Office of the Attorney General. Judge Shoemake further avers that Rule 1.9(b) is not implicated by this case at all, since the Attorney General never "formerly represented a client" in this matter, other than Judge Shoemake: "[t]he Attorney General's representation is only of Judge Shoemake, and has only been of Judge Shoemake." Shoemake states that "the Attorney General—like all government lawyers—is often in situations that have no analog in the private practice of law."

¶53.    The Attorney General has "the powers of the Attorney General at common law, and, except as otherwise provided by law, is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest." Miss. Code Ann. § 7-5-1 (Rev. 2014). The legislature further has provided, in pertinent part, that:

> In addition to all power and authority vested in the attorney general of the state of Mississippi by its constitution and statutes and all common law power and authority which may be invested in or exercised by such attorney general as such, the attorney general of the state of Mississippi and his assistants and representatives are hereby authorized upon request made of him to, in his discretion, render such services as the attorney general may deem necessary to assist in advising and in representing, either or both, all officers or employees . . . of the state of Mississippi, . . . should they or any of them . . . be sued in an action at law or in equity, . . . under the constitution and other laws of the state of Mississippi, or growing out of such official action or nonaction, as the case may be.

25

Miss. Code Ann. § 7-5-43 (Rev. 2014). And the Mississippi Constitution provides that "all prosecutions shall be carried on in the name and by authority of the 'State of Mississippi' . . . ." Miss. Const. art. 6, § 169.

¶54. Representation of Judge Shoemake as a public official was within the authority of the Attorney General. Victoria Newsome was never and could never be a "client" of the Attorney General as contemplated by the Mississippi Rules of Professional Conduct, since prosecution of cases is solely in the name of the State of Mississippi. The trial court did not commit manifest error in finding that no evidence existed in the record to demonstrate either the existence of an actual attorney-client relationship between the Newsomes and the Attorney General or that a substantial relationship existed between the mishandling of Victoria Newsome's conservatorship and the Attorney General's defense of Judge Shoemake, a current public official, in the present civil lawsuit. *See **Williams***, 793 So. 2d at 612.

> **4.  Whether the trial court erred in denying Marilyn Newsome's "Motion to Set Aside and Vacate Order Granting Defendant Shoemake's Motion to Stay Discovery and Order Denying Plaintiff's Motion to Disqualify Attorney General . . . ."**

¶55. Marilyn Newsome claims that the trial court ruled on Judge Shoemake's motion to stay discovery and on her motion to disqualify the Attorney General "without notice" to her and she further claims that "[n]o formal hearing was held and therefore Marilyn was not able to put on any evidence in support of her Motions." As such, she argues that the trial court erred in denying her Motion to Set Aside and Vacate.

¶56. Judge Shoemake filed his motion to stay discovery on March 19, 2015, and the Special Assistant Attorney General certified that notice had been provided on March 18,

26

2015, to Marilyn Newsome's counsel, Terrell Stubbs, Esq. Newsome responded to that motion on April 1, 2015. Marilyn Newsome filed her motion to disqualify the Attorney General on March 31, 2015. The trial court denied both motions on September 2, 2015, and the orders were entered by the Simpson County Chancery Clerk on September 4, 2015. That same day, Marilyn Newsome filed her Motion to Set Aside and Vacate. The trial court heard arguments on the Motion to Set Aside and Vacate on January 8, 2016. Consequently, Marilyn's claim that she lacked notice is totally unsupported by the record on appeal. Her claim that no hearing was held is equally unavailing, because the trial court did hold a hearing on her Motion to Vacate and Set Aside.

¶57.    Further, Marilyn Newsome's reliance on Mississippi Rule of Civil Procedure 78 is unavailing. That Rule provides:

> Each court shall establish procedures for the prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of; but the judge at any time or place and on such notice, if any, as he considers reasonable may make orders for the advancement, conduct, and hearing of actions.

> To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.

Miss. R. Civ. P. 78. Marilyn argues that the trial court "erred in not providing any written statement of reasons in support and opposition of said Motions in the Order Denying Motion to Set Aside And Vacate . . . ."

¶58.    But the trial court's order on Marilyn's motion to disqualify the Attorney General specified that she had failed to present evidence that an attorney-client relationship existed

27

between the Newsomes and the Attorney General and that the record did not support that "Plaintiff reasonably believed that the Attorney General was her attorney." And, as is discussed above, the trial court correctly stayed discovery when Judge Shoemake, joined by Walker, raised judicial immunity in a Rule 12(b)(6) motion to dismiss.

¶59.  We discern no error in the trial court's denial of Marilyn Newsome's Motion to Set Aside and Vacate.

## RULING: MOTION TO STRIKE ALLEGATION

¶60.  Keely McNulty filed a Motion to Strike Allegation on August 17, 2016. She asks this Court to strike the following language from the second paragraph of page 3 of the Brief of Appellant: "Keely McNulty, the previous attorney for the conservator, also agreed to plead guilty to a misdemeanor involving her conduct while counsel of record for the conservatorship." On September 20, 2016, this Court passed the motion for consideration with the merits of the appeal.

¶61.  It is true, as McNulty avers, that "Mississippi appellate courts may not consider information that is outside of the record." *Shumake v. Shumake*, 147 So. 3d 352, 354 n.1 (Miss. 2014) (quoting *Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002)).

¶62.  Marilyn Newsome responds that "said allegation is in the Record before this Court, [sic] in fact, said allegation is a direct quote from Marilyn's Amended Complaint . . . ." And Marilyn correctly observes that, when reviewing a Rule 12(b)(6) motion to dismiss, "[t]he allegations in the complaint must be taken as true . . . ." *Rose*, 994 So. 2d at 737 (citing *Gallagher*, 926 So. 2d at 893). Nevertheless, Marilyn Newsome fails to provide a specific

28

citation from the record and we, having scoured the Amended Complaint and other parts of the record, are unable to locate the allegation.

¶63. Accordingly, this Court strikes the following language from the second paragraph of page 3 of the Brief of Appellant: "Keely McNulty, the previous attorney for the conservator, also agreed to plead guilty to a misdemeanor involving her conduct while counsel of record for the conservatorship."

## CONCLUSION

¶64. The doctrine of judicial immunity applies to bar Marilyn Newsome's claims, made on behalf of the Victoria Newsome Conservatorship, against former chancellor Joe Dale Walker and Chancellor David Shoemake. We therefore affirm the judgment of the Chancery Court of Simpson County granting a Rule 54(b) dismissal. In addition, we grant Keely McNulty's Motion to Strike Allegation.

¶65. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR. KING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. BEAM, J., NOT PARTICIPATING.**

**KING, JUSTICE, SPECIALLY CONCURRING:**

¶66. I agree that judicial immunity applies in this case. I write separately to express my concern over the notion repeated by the majority in our recent judicial immunity cases that the primary remedy available to those who believe a judge has acted either contrary to or in excess of his authority is to file a complaint with the Mississippi Commission on Judicial

29

Performance. *See* Maj. Op. ¶38; *Weill v. Bailey*, 2017 WL 1295370, __ So. 3d __ (Miss. April 6, 2017).

¶67. If this Court is going to dismiss cases based on judicial immunity, offering the alternative remedy of a complaint with the Commission, we need to actually provide a such a remedy in judicial performance cases. In this case, we did not. *See Miss. Comm'n on Judicial Performance v. Shoemake*, 191 So. 3d 1211 (Miss. 2016); *Miss. Comm'n on Judicial Performance v. Walker*, 172 So. 3d 1165 (Miss. 2015) (Walker was removed from office after pleading guilty to a federal crime. The Formal Complaint before the Commission "contain[ed] various allegations regarding [Walker's] mismanagement of [Newsome's] conservatorship." Nothing was done to make Newsome whole in that case.). A "remedy" includes redressing a wrong, when appropriate. *Remedy*, Black's Law Dictionary (10th ed. 2014). We leave Newsome without any mechanism to redress the wrong done.

¶68. In *Shoemake*, we addressed what sanctions to impose upon Judge Shoemake for the complaint filed regarding this very situation. *Shoemake*, 191 So. 3d at 1213-14. This Court found that a suspension, a public reprimand, a fine of $2,500, and the assessment of costs was an appropriate sanction. *Id.* at 1224. I dissented in part, arguing that this Court should impose an additional sanction that Judge Shoemake must make Newsome's estate whole. *Id.* at 1225 (King, J., concurring in part and dissenting in part). The majority disagreed, and concluded that it "leave[s] the decision of whether or not to pursue those or similar damages with Victoria and her wardship[,]" essentially maintaining that Newsome's remedy was a civil lawsuit. *Id.* at 1223. Now that Newsome is pursuing those damages, this Court tells

her that her remedy lies with the Commission. We appear to be providing an impossible catch-22 to those members of the public actually financially harmed by egregious actions of the judiciary. The "remedy" we offer before the Commission should live up to its definition and be able to redress the wrong, should that be appropriate, and I encourage this Court to consider that in future cases such as this one.